## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**PATRICIA WALKER-SWINTON**                                    **PLAINTIFF**

**v.**                        **Case No. 4:18-cv-00886-KGB**

**PHILANDER SMITH COLLEGE,** *et al.*                        **DEFENDANTS**

### <u>ORDER</u>

Plaintiff Patricia Walker-Swinton alleges that defendants Philander Smith College ("PSC"), Dr. Roderick Smothers, Sr., and Zollie Stevenson, Jr., discriminated against her based on her gender and age, harassed her, denied her equal pay, and retaliated against her in violation of 42 U.S.C. §§ 1981 and 1983 and 42 U.S.C. § 2000e *et seq.* ("Title VII").  Before the Court are several motions, including:  (1) a motion to disqualify counsel and to strike complaint as a nullity by defendants; (2) a motion to dismiss filed by PSC and Dr. Smothers; (3) a separate motion to dismiss filed by Mr. Stevenson; (4) a motion to show cause by defendants; and (5) a motion to amend complaint by Ms. Walker-Swinton (Dkt. Nos. 4, 7, 21, 29, 36).  Also pending before the Court are various motions for extensions filed by Ms. Walker-Swinton and a motion to strike filed by defendants (Dkt. No. 10, 14, 18, 32, 33).

To the extent discussed below, the Court grants the motions to dismiss (Dkt. Nos. 7, 21). The Court denies the motion to disqualify counsel and to strike complaint as a nullity, the motion to show cause, and the motion to amend complaint (Dkt. No. 4, 29, 36).  The Court grants the pending motions for extension of time (Dkt. Nos. 10, 18, 32, 33).  The Court denies the motion to strike (Dkt. No.14).

I.      **Background**

The following facts are taken from Ms. Walker-Swinton's complaint filed in this action, unless otherwise noted.  The Court treats Ms. Walker-Swinton's allegations as true for the purposes of this Order.  Ms. Walker-Swinton is an African American female, aged 47, who was an employee of PSC until her employment was terminated on or about June 27, 2018 (Dkt. No. 1, ¶ 12).  Ms. Walker-Swinton was an employee and instructor at PSC during the time of the actions at issue (*Id.*, ¶ 13).

Dr. Smothers is a male employee of PSC, and he is the President of PSC (*Id.*, ¶ 14).  He was hired by PSC in January 2015 (*Id.*, ¶ 32).  Mr. Stevenson is a male employee of PSC, and he is the Vice President of Academic Affairs for PSC (*Id.*, ¶ 15).  Ms. Walker-Swinton alleges that Dr. Smothers and Mr. Stevenson always acted in their individual and official capacities during the events alleged in the complaint (*Id.*).  Further, Ms. Walker-Swinton alleges that PSC was the employer of Dr. Smothers and Mr. Stevenson and that, at all relevant times, it had the power, right, and duty to control the way the individual defendants carried out the objectives of their employment (*Id.*, ¶ 17).

Ms. Walker-Swinton was hired by PSC as a reading and English coach in July 2011 (*Id.*, ¶ 19).  Her contracted salary was $30,000.00 annually (*Id.*, ¶ 20).  In August 2011, Ms. Walker-Swinton took on additional positions as the reading and English coach in the Academic Success Center and later as a sponsor of the cheer teams (*Id.*, ¶ 21).  In May 2012, Ms. Walker-Swinton was promoted to the position of full-time English instructor (*Id.*, ¶ 22).  In the summer of 2012, Ms. Walker-Swinton created PSC's cheer and dance team, known as the Panther Dolls (*Id.*).  Her employment title was updated to "Director/Coach of Cheer and Dance." (*Id.*, ¶ 23).  She was paid a stipend of $4,000.00 per year for her position as coach of the Panther Dolls (*Id.*, ¶ 24).

Additionally, in August 2012, she received a salary increase to $34,000.00 for her position as English instructor (*Id.*, ¶ 25).

In 2013, Ms. Walker-Swinton created the Division of General Education for PSC (*Id.*, ¶ 27). In January 2014, she received a salary increase to $40,000.00 (*Id.*, ¶ 29). In the spring of 2014, she was promoted to the position of "Interim Chair for the Division of General Education" and appointed as the writing coordinator for PSC's Academic Success Center (*Id.*, ¶ 28). Further, in the summer of 2014, Ms. Walker-Swinton represented PSC as the English instructor for the Donaldson Scholars Program (*Id.*, ¶ 30). During the 2014 to 2015 athletic season, Ms. Walker-Swinton received a stipend of $4,000.00 for serving as coach of the Panther Dolls (*Id.*, ¶ 31).

During the summer of 2015, Ms. Walker-Swinton was compensated $3,000.00 to teach English in PSC's "S.T.A.R.T. Program." (*Id.*, ¶ 33). During the fall of 2015, Ms. Walker-Swinton complained to Dr. Smothers that she was not paid for duties she performed with the S.T.A.R.T. program (*Id.*, ¶ 36). Further, at some point in the time period spanning 2015 to 2018, Ms. Walker-Swinton complained that she was not paid on time for her duties as coach for the Panther Dolls (*Id.*, ¶ 37). During the same time period, she complained to Dr. Smothers and Mr. Stevenson that she was not paid at the same rate and that she was treated differently compared to similarly situated younger male coaches (*Id.*, ¶¶ 38-39). Further, at some point between 2015 and 2016, Ms. Walker-Swinton complained that she had not been paid the $5,000.00 stipend for her interim chair duties (*Id.*, ¶ 40).

During the summer of 2016, Ms. Walker-Swinton worked as an English instructor for the S.T.A.R.T. program and was paid $2,000.00 per class (*Id.*, ¶ 41). Also during the summer of 2016, Ms. Walker-Swinton served as "Coordinator of Faculty & Academics" for the S.T.A.R.T. program and was compensated $5,000.00 (*Id.*, ¶ 42). Throughout the 2016-2017 academic year, she

complained to PSC after she was not paid for her Panther Dolls coaching duties;  she was compensated at the end of the school year (*Id*., ¶ 43).  Further, during the same academic year, she did not receive the $5,000.00 stipend for her interim chair duties until after she complained to the PSC department chairs; she received this stipend after the school year ended (*Id*., ¶ 44).

Similarly, during the 2017 academic year, Ms. Walker-Swinton again served as the Coordinator for Faculty & Academics in the S.T.A.R.T. program and expected a stipend of $5,000.00 (*Id*., ¶ 45).  She alleges that PSC breached the agreement to pay her $5,000.00 and instead paid her $3,000.00 (*Id*., ¶ 46).  She alleges that in August 2017, she made complaints to Mr. Stevenson about the $3,000.00 payment (*Id*., ¶ 47).  She also alleges that, in September 2017, she made complaints to Mr. Stevenson about not receiving her interim chair stipend (*Id*., ¶ 48).  In October 2017, PSC removed Ms. Walker-Swinton from her interim chair duties (*Id*., ¶ 49).

In February 2018, Ms. Walker-Swinton made complaints to Mr. Stevenson regarding the unresolved question of payment and equal pay for her duties as coach of the Panther Dolls (*Id*., ¶ 50).  Additionally, sometime during spring 2018, Ms. Walker-Swinton made complaints to Nathan Cochran, who works in the Office of the President of PSC, regarding PSC's failure to pay her for her duties as coach of the Panther Dolls and about the equal pay issues (*Id*., ¶ 52).

On April 9, 2018, Ms. Walker-Swinton was threated by a student in the classroom (*Id*., ¶ 53).  The student threatened to "slap the fuck out of" Ms. Walker-Swinton and to "beat her ass." (*Id*., ¶ 54).  The same day, Ms. Walker-Swinton informed Dr. Smothers of the assault and threat (*Id*., ¶ 55).  She also contacted Arthur Williams, PSC's security chief, and informed him of the incident (*Id*., ¶ 56).  She alleges that Mr. Williams did not investigate her complaint (*Id*., ¶ 57).

On or about April 10, 2018, Ms. Walker-Swinton met with Mr. Stevenson, counsel for PSC, and Dr. Dakota Doman, Vice President of Student Affairs, to discuss the incident (*Id*., ¶ 59).

On April 10, 2018, she complained to Mr. Stevenson about her concerns for her safety on the PSC campus and requested protection (*Id.*, ¶ 60).  She also informed PSC's counsel and Mr. Stevenson about the existence of a video of the incident and the name of the students who possessed the video (*Id.*, ¶ 61).

On June 27, 2018, Ms. Walker-Swinton was discharged by PSC (*Id.*, ¶ 63).  She alleges that her discharge was due to the complaints she made regarding unequal pay to her young male coworkers (*Id.*).  She also alleges that her male coworkers were not terminated for poor behavior.  For example, she alleges that, during the summer of 2015, Chris Smith, a member of PSC's leadership team, allegedly used abusive language in the presence of Dr. Smothers (*Id.*, ¶ 34).  She asserts that Mr. Smith was not terminated for this behavior (*Id.*, ¶ 35).  Furthermore, she alleges that Dr. Smothers publicly threatened students by saying, "I will personally put your asses on a bus back to Louisiana." (*Id.*, ¶ 51).

Attached to Ms. Walker-Swinton's original complaint is a right-to-sue letter issued by the Equal Employment Opportunity Commission ("EEOC") (Dkt. No. 1, at 22).  This letter was issued on August 30, 2018 (*Id.*).  Also attached to her complaint is a letter from Mr. Stevenson to Ms. Walker-Swinton terminating her employment (*Id.*, at 23).  In this letter, Mr. Stevenson states that Ms. Walker-Swinton's behavior during the April 9, 2018, classroom incident "violated the College's General Harassment Policy Statement . . . ." (*Id.*).  Further, the letter states that Ms. Walker-Swinton:

> failed to disclose material information in the course of the College's investigation, attempted to conceal facts by deleting What's App and Group Me messages, then directed students as to what to include in their witness statements, and altered one witness's statement without that individual's knowledge or consent.

(*Id.*).

Attached to PSC's answer to Ms. Walker-Swinton's original complaint is a copy of the EEOC Charge (the "Charge") filed by Ms. Walker-Swinton (Dkt. No. 6-1). On the Charge, Ms. Walker-Swinton checked the boxes for "sex" and "age" discrimination and stated that the earliest date of discrimination occurred on April 1, 2018, and the latest date of discrimination was August 2, 2018 (*Id.*). She also stated that she was hired in July 2011 and that "[t]hroughout my employment, I have repeatedly reported conduct I believed to be harassment and discriminatory [sic]." (*Id.*). She stated that she was demoted in October 2017, that she was "not paid a stipend as a Division or Department Chair," and that she was subjected to harassment in April 2018 during the classroom incident (*Id.*). She further stated that she was terminated on June 27, 2018 (*Id.*). She alleges in her Charge that a condition of her employment was that she "was treated differently than male coaches, and all of the coaches, are younger than me, that were similarly situated." (*Id.*). Specifically, she alleges in her Charge that "all of the male coaches were given a contract, stipend and budget," but she "was required to pay in advance for all activities the athletes in cheer dance [sic] participated." (*Id.*, at 2).

## II.     Motion To Dismiss Under Rule 12(b)(4) and (b)(5)

Defendants have moved to dismiss Ms. Walker-Swinton's original complaint under Rules 12(b)(4) and (b)(5) of the Federal Rules of Civil Procedure based upon defects in the summons and service (Dkt. Nos. 7, at 2-3; 21, at 2). For the reasons discussed below, the Court denies defendants' motions to dismiss to the extent they are based upon insufficiency of the summons and service (Dkt. Nos. 7, 21).

### A.     Legal Standard

Motions for dismissal under Rule 12(b)(4) challenge the content of the summons, and motions for dismissal under Rule 12(b)(5) concern the proper procedure for serving the summons

and complaint or the mode or lack of delivery of the summons and complaint. To determine whether process and service of process were proper for the purposes of both Rule 12(b)(4) and (b)(5), courts look to the requirements of Rule 4 of the Federal Rules of Civil Procedure. *See* 5B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1353 (3d ed.). Under Rule 4(a)(1), a summons must name the court and the parties, be directed to the defendant, state the name and address of the plaintiff's attorney (if represented), state the time within which the defendant must appear and defend, notify the defendant of the risk of a default judgment, be signed by the clerk, and bear the court's seal. Fed. R. Civ. P. 4(a)(1)(A)-(G). Furthermore, "[a] summons—or a copy of the summons that is addressed to multiple defendants—must be issued for each defendant to be served." Fed. R. Civ. P. 4(b). As for service of process, the summons must be served with a copy of the complaint. Fed. R. Civ. P. 4(c). As a result, service of a partial complaint may be insufficient, particularly where the missing pages do not place a defendant on notice of all allegations against them. *See*, *Cherry v. Spence*, 249 F.R.D. 226, 229 (E.D.N.C. 2008) (finding insufficient service where plaintiff only served the first page of the complaint).

A plaintiff has the burden of establishing the validity of service of process. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995). In addressing a motion based on Rule 12(b)(4) or (b)(5), a court must necessarily review affidavits outside the pleadings. 5B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. and Pro. Civ* § 1353 (3d ed.).

### B.     Sufficiency Of Process And Service Of Process

Defendants move to dismiss Ms. Walker-Swinton's complaint under Rules 12(b)(4) and (b)(5) of the Federal Rules of Civil Procedure. The Court denies defendants' motions to dismiss under Rule 12(b)(4) and (b)(5) (Dkt. Nos. 7, 21).

First, the Court denies defendants' motions to dismiss under Rule 12(b)(5).  Rule 12(b)(5) authorizes a motion to dismiss on grounds of insufficiency of service of process and is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint. *LNV Corp. v. Robb*, 843 F. Supp. 2d 1002, 1003 (W.D. Mo. 2012) (citation omitted).  "The burden of proof lies with the party raising a challenge to the sufficiency of service of process." *Id.* (citation omitted).  Mr. Stevenson is the only defendant who questions the service of process:  he asserts that he was never personally served with a summons and a copy of the complaint at his personal home and that, instead, service was given to another individual "who is not Stevenson's agent for service." (Dkt. No. 22, at 4).  Mr. Stevenson presents no affidavits or other record evidence in support of this contention.  The record evidence does, however, contain an affidavit from Antonio Pointer, who avers that he personally served Mr. Stevenson with a summons and complaint in this action (Dkt. No. 28).  Further, the record evidence contains affidavits of service upon Dr. Smothers and PSC.  Based upon this record evidence, the Court denies defendant's Rule 12(b)(5) motions to dismiss for insufficient service of process.

The Court next turns to defendants' contention that the complaint must be dismissed for insufficient process pursuant to Rule 12(b)(4).  An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service.  5B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. and Proc. Civ.* § 1353 (3d ed.).   Rule 4(a)(1) requires a summons to name the court and the parties, and to be directed to the defendants, among other things.  Fed. R. Civ. P. 4(a)(1).  Defendants assert that the summons were defective because the summons did not include the name of the parties or the Clerk's seal (Dkt. Nos. 8, at 5; 22, at 4).  According to defendants, the summons only names "Philander Smith College, et.[] al." (*Id.*).  PSC and Dr. Smothers alternatively argue that, even if the summons satisfies Rule 4's requirements, the

summons to Dr. Smothers was ineffective because he was never served with a separate summons as required by Rule 4(b).  The summons served upon Dr. Smothers was addressed as follows:

> Roderick Smothers, Sr.
> Philander Smith College
> 900 Daisy Bates Drive
> Little Rock, AR 72202

(Dkt. No. 7-1, at 1).  Dr. Smothers and PSC argue that this manner of addressing the summons violates Rule 4 because it identifies Dr. Smothers "as an agent for the College" rather than being addressed to Dr. Smothers individually (Dkt. No. 8, at 5).  Since these arguments are directed to the content of the summons, the Court construes them as arguments in support of a motion to dismiss under Rule 12(b)(4).

The Court denies defendants' motions to dismiss to the extent they are brought under Rule 12(b)(4).  "Technical defects contained within a summons do not justify dismissal unless a party is able to demonstrate actual prejudice."  *FDIC v. Swager*, 773 F. Supp. 1244, 1249 (D. Minn. 1991) (citations omitted).  Further, Rule 4(a)(2) allows the Court to permit amendment of a summons. Fed. R. Civ. P. 4(a)(2).  It does appear that the summons issued to Dr. Smothers and Mr. Stevenson include at least one technical defect:  those summonses do not list the name of each defendant but rather state that the defendants are "Philander Smith College, et[]al." (Dkt. Nos. 7-1, at 1; 21-1, at 1).  The original complaint, however, includes the name of each defendant in its caption (Dkt. No. 1, at 1).  Further, the affidavits of service before the Court indicate that Dr. Smothers and Mr. Stevenson were served with a copy of the complaint—which does list the name of each defendant—at the same time they were served with the summonses (Dkt. Nos. 9, 28).

Based upon this record evidence and the fact that PSC, Dr. Smothers, and Mr. Stevenson have each filed motions to dismiss the complaint, the Court concludes that defendants have not suffered any prejudice due to the technical errors in the summonses.  Thus, dismissal would be an

inappropriate remedy; rather, the Court grants Ms. Walker-Swinton leave to amend the summonses and serve each defendant with the amended summons and original complaint *nunc pro tunc* on or before October 4, 2019, in accordance with Rule 4 of the Federal Rules of Civil Procedure.

### III.    Motion To Dismiss Under Rule 12(b)(6)

Defendants have moved to dismiss certain claims made by Ms. Walker-Swinton for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. Nos. 7, 21).  First, defendants argue that Ms. Walker-Swinton's claims under 42 U.S.C. §§ 1981 and 1983 must be dismissed (Dkt. Nos. 7, at 3, 21, at 3).  Second, defendants argue that Ms. Walker-Swinton's claims for gender discrimination under Title VII and the ACRA against Dr. Smothers and Mr. Stevenson in their individual capacities must be dismissed (Dkt. Nos. 7, at 4, 21, at 3).  Third, defendants argue that Ms. Walker-Swinton's claims for age discrimination under Title VII and the ACRA must be dismissed (Dkt. Nos. 7, at 4, 21, at 3).  Fourth, PSC and Dr. Smothers argue that Ms. Walker-Swinton's breach of contract claim must be dismissed (Dkt. No. 7, at 4).  Fifth, PSC and Dr. Smothers argue that the Court should dismiss Ms. Walker-Swinton's discrete allegations of discrimination or retaliation that arose prior to February 22, 2018, as untimely (*Id.*).  Sixth, PSC and Dr. Smothers argue that any claims that arose prior to April 1, 2018, must be dismissed for failure to exhaust administrative remedies (*Id.*).  Seventh, PSC and Dr. Smothers request that the Court dismiss or strike Ms. Walker-Swinton's requests for relief (*Id.*, at 5).  Finally, defendants ask the Court to stay the proceedings until after the Court rules upon the motion to disqualify counsel and strike Ms. Walker-Swinton's complaint as a nullity (Dkt. No. 4).

For the reasons discussed below, the Court dismisses without prejudice Ms. Walker-Swinton's claims against defendants under §§ 1981 and 1983 for failure to state a claim upon which relief may be granted.  The Court also dismisses without prejudice the following claims:  (1) Ms.

Walker-Swinton's gender discrimination and retaliation claims under Title VII against Dr. Smothers and Mr. Stevenson in their individual capacities; (2) Ms. Walker-Swinton's gender discrimination claims under the ACRA against Dr. Smothers and Mr. Stevenson in their individual capacities; and (3) Ms. Walker-Swinton's age discrimination claims against defendants under Title VII and the ACRA.  The Court dismisses with prejudice Ms. Walker-Swinton's Title VII claims against defendants based upon her October 2017 demotion and her Title VII claims arising from incidents that occurred prior to April 1, 2018.

The Court declines to dismiss Ms. Walker-Swinton's retaliation claims under the ACRA against Dr. Smothers and Mr. Stevenson in their individual capacities.  The Court also declines to dismiss Ms. Walker-Swinton's claims for breach of contract or her requests for relief.

### A.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "While a complaint attacked by a [Federal] Rule [of Civil Procedure] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted).  "[T]he complaint must contain facts which state a claim as a matter of law and must not be conclusory."  *Briehl v. General Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999).  "When ruling on a motion to dismiss, the district court must accept the

allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

When ruling on a Rule 12(b)(6) motion to dismiss, a district court generally may not consider materials outside the pleadings. *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008); *see* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). The district court "may, however, consider some public records, materials that do not contradict the complaint or materials that are 'necessarily embraced by the pleadings.'" *Noble Sys. Corp.*, 543 F.3d at 978 (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). Accordingly, this Court may consider the charges of discrimination and documents filed with the EEOC in ruling on defendants' Rule 12(b)(6) motions to dismiss. *See Faisbisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002) (determining that "an EEOC charge is part of the public record, and thus the motion to dismiss was not converted to one for summary judgment by the attachment of a copy of the EEOC charge.").

### B.    Claims Under §§ 1981 And 1983

The Court dismisses Ms. Walker-Swinton's claims brought under 42 U.S.C. §§ 1981 and 1983. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (citation omitted). "Anyone whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983." *Filarsky*, 566 U.S. at 383. The Eighth Circuit Court of Appeals has explained that there are a "number of circumstances in which a private party may be characterized as a state

actor" to be amenable to suit under § 1983. *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007). Similarly, the Eighth Circuit has held that, as to the full and equal benefit clause of § 1981, "because the state is the sole source of the law, it is only the state that can deny the full and equal benefit of the law." *Bilello v. Kum & Go, LLC*, 374 F.3d 656, 661 (8th Cir. 2004) (quoting *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001)) (additional citation omitted). As such, the Eighth Circuit has held that "under the Full-and-Equal-Benefit clause [of 42 U.S.C. § 1981 a plaintiff must] allege that some sort of state action contributed to [the plaintiff's] being discriminated against." *Bilello*, 374 F.3d at 661 (citation and internal quotations omitted).

Here, Ms. Walker-Swinton has alleged no state action by defendants or any nexus between defendants and a state actor. Further, she does not argue that she alleged state action. Accordingly, Ms. Walker-Swinton's claims under §§ 1981 and 1983 are dismissed for failure to state a claim upon which relief may be granted.

## C.  Individual Liability Under Title VII And The ACRA

The Court dismisses Ms. Walker-Swinton's Title VII gender discrimination and retaliation claims against Dr. Smothers and Mr. Stevenson in their individual capacities. The Court also dismisses Ms. Walker-Swinton's ACRA gender discrimination claims against Dr. Smothers and Mr. Stevenson in their individual capacities.

Under Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." 42 U.S.C. § 2000e(b). "[T]he obvious purpose of th[e] agent provision [of § 2000e(b)] was to incorporate respondeat superior liability into the statute." *Grissom v. Waterloo Indus.*, 902 F.

Supp. 867, 870 (E.D. Ark. 1995) (alterations in original) (citation omitted).  The Eighth Circuit has consistently held that supervisors may not be held individually liable under Title VII.  *Griffin v. Webb*, 653 F. Supp. 2d 925, 933 (E.D. Ark. 2009) (quoting *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 931 (8th Cir.2007) (quoting *Schoffstall v. Henderson*, 223 F.3d 818, 821 n.2 (8th Cir.2000))).  Thus, "if a Title VII plaintiff names his or her employer as a defendant, any of the employer's agents also named in the complaint may be dismissed from the action."  *Moss v. W & A Cleaners*, 111 F. Supp. 2d 1181, 1187 (M.D. Ala. 2000).  Ms. Walker-Swinton has alleged that Dr. Smothers and Mr. Stevenson are both employees of PSC.  Accordingly, the Court dismisses without prejudice Ms. Walker-Swinton's Title VII gender discrimination and retaliation claims against Dr. Smothers and Mr. Stevenson in their individual capacities.

Further, claims under the ACRA generally are analyzed in the same manner as Title VII claims. *Hill v. City of Pine Bluff, Arkansas*, 696 F.3d 709, 715-16 (8th Cir. 2012); *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612 (8th Cir. 2000).  Thus, there is no individual liability under the ACRA for discrimination claims.  *See Richardson v. City of Pine Bluff, AR*, No. 5:05-cv-0179 SWW, 2006 WL 3388341, at *1 (E.D. Ark. Nov. 21, 2006).  The Court notes, however, that in *Calaway v. Practice Mgmt. Serv., Inc.*, 2010 Ark. 432 (2010), the Arkansas Supreme Court recognized a cause of action under the ACRA for retaliation against a supervisor in his individual capacity.

Accordingly, the Court dismisses without prejudice Ms. Walker-Swinton's gender discrimination and retaliation claims under Title VII against Dr. Smothers and Mr. Stevenson in their individual capacities.  The Court dismisses without prejudice Ms. Walker-Swinton's gender discrimination claims under the ACRA against Dr. Smothers and Mr. Stevenson in their individual capacities.  The Court denies plaintiffs' motion to dismiss to the extent it seeks dismissal of Ms.

Walker-Swinton's retaliation claims under the ACRA against Dr. Smothers and Mr. Stevenson in their individual capacities.

### D.     Age Discrimination Claims Under Title VII And The ACRA

Defendants argue that Ms. Walker-Swinton's claims for age discrimination against them under Title VII and the ACRA must be dismissed.   The Court agrees.   Title VII prohibits discrimination in employment on the basis of the employee's race, color, religion, sex, or national origin.   42 U.S.C. § 2000e-2(a)(1).   Age does not provide a basis upon which an aggrieved employee may obtain relief under Title VII.   *See Smith v. City of Jackson, Miss.*, 544 U.S. 228, 232 (noting that when Congress passed Title VII, it "considered and rejected proposed amendments that would have included older workers among the classes protected from employment discrimination.") (citing *Gen. Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581, 587 (2004)).   Furthermore, Ms. Walker-Swinton cannot bring an age discrimination claim under the ACRA because the list of protected classes under the ACRA does not include certain age groups.   Ark. Code Ann. § 16-123-107 ("The right of an otherwise qualified person to be free from discrimination because of race, religion, national origin, gender, or the presence of any sensory mental, or physical disability is recognized and declared to be a civil right."); *see Bell v. Am. Greetings Corp.*, Case No. 3:04-cv-00303 WRW, 2007 WL 1559946, at *3 (E.D. Ark. May 29, 2007), *aff'd*, 279 Fed. App'x 415 (8th Cir. 2008); *Harmon v. Gerber Products Co.*, Case No. 07-02057, 2007 WL 3500433, at *1 (W.D. Ark. Nov. 14, 2007).   Accordingly, the Court dismisses Ms. Walker-Swinton's age discrimination claims under Title VII and the ACRA for failure to state a claim upon which relief may be granted.

### E.        Title VII Timeliness And Exhaustion Requirement

PSC and Dr. Smothers argue that Ms. Walker-Swinton's Title VII claims are untimely and that she did not exhaust any claims that accrued prior to April 1, 2018.  To the extent discussed below, the Court agrees.

Title VII requires that charges first be filed with the EEOC with 180 days of when the unlawful employment practice occurred.  *See* 42 U.S.C. § 2000e–5(e)(1) (stating that, under Title VII, EEOC charge must be filed within 180 days of when alleged unlawful employment practice occurred; 300–day filing period applies if person initially instituted state or local agency proceedings); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109–110 (2002) (timely EEOC charge is mandatory).  Further, even if a plaintiff files a timely charge, that plaintiff must also exhaust his remedies by giving notice of all claims of discrimination in the EEOC charge.  *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630-31 (8th Cir. 2000).  Claims outside the scope of the EEOC charge circumvent the EEOC's investigative and conciliatory process and fail to provide the charged party with notice.  *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).

Ms. Walker-Swinton's Charge was filed August 21, 2018 (Dkt. No. 6-1).  Events occurring prior to February 22, 2018, which is 180 days prior to August 21, 2018, may be included in this action if Ms. Walker-Swinton alleged a continuing violation.  The Supreme Court has held that discrete acts such as termination, failure to promote, denial of transfer, and refusal to hire are "not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 114.  Further, "[l]ike termination or failure to promote, demotion is a discrete act."  *Garcia v. Centerpoint Energy Resources Corp.*, Case No. 1:10-cv-54-DPM, 2012 WL

892278, at *2 (E.D. Ark. Mar. 15, 2002).  With respect to such discrete acts, the Eighth Circuit has held that each occurrence "starts a new clock for purposes of filing charges related to that act, and an employee must file charges within 180 days . . . of a discrete discriminatory action." *Tademe v. State Cloud State Univ.*, 328 F.3d 982, 987 (8th Cir. 2003) (citing *Morgan*, 536 U.S. at 114-15). Alternatively, continuing violation claims are treated differently from discrete acts; for such claims to be timely, Ms. Walker-Swinton need only to have filed a charge within 180 days of any act that is part of the hostile work environment.  *Morgan*, 536 U.S. at 118.

Ms. Walker-Swinton filed a timely charge with respect to the allegedly discriminatory and retaliatory termination that occurred on June 27, 2018, but the continuing violation theory does not save Ms. Walker-Swinton's claims based upon her alleged demotion in October 2017.  *See Morgan*, 536 U.S. at 112 ("[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period."); *see also Gillespie v. Charter Communications*, 31 F. Supp. 3d 1030, 1034 (8th Cir. 2014) (finding that timely filed charges of failure to promote cannot make timely discrete acts of denials of promotion that occurred more than 180 days before the EEOC charge was filed) (citing *Tademe*, 328 F.3d at 987-88).  Thus, Ms. Walker-Swinton's Title VII claims based upon her October 2017 demotion are dismissed with prejudice.

The Court also concludes that Ms. Walker-Swinton has failed to exhaust any claims that may have arisen prior to April 1, 2018, which is the date she identified in her EEOC Charge as the earliest date the alleged conduct began.  "The claims of employment discrimination in the complaint may be as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge."  *Kirklin v. Joshen Paper & Packaging of Arkansas Co.*, 911 F.3d 530, 536 (8th Cir. 2018) (quoting *Shelton v. Boeing Co.*, 399 F.3d 901, 912 (8th Cir. 2005)).  In *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851-52 (8th Cir. 2012),

however, the Eighth Circuit held that "discrete acts" of unlawful discrimination or retaliation that were not exhausted in an EEOC charge—whether such acts occurred before or after a charge is filed—cannot circumvent Title VII's exhaustion requirement under the "like or reasonably related to" test. *Richter*, 686 F.3d at 852 (citing *Wedow v. City of Kansas City, Missouri*, 442 F.3d 661, 672-73 (8th Cir. 2006)).

The October 2017 demotion is the only specific incident before April 1, 2018, alleged in Ms. Walker-Swinton's Charge. The Charge also states that the earliest date the discrimination took place was April 1, 2018, and the latest date was August 2, 2018 (Dkt. No. 6-1, at 1). Otherwise, in her Charge, Ms. Walker-Swinton states that she was hired in July 2011 and that "[t]hroughout my employment, I have repeatedly reported conduct I believed to be harassment and discriminat[ion]." (*Id.*). Ms. Walker-Swinton further alleges in her Charge that "[a]lthough it is the [defendants'] practice to provide coaches with a contract and pay throughout the season, I have not been given a contract and have been paid a lump sum at the end of the school term." (*Id.*). It is not reasonable to believe that, based upon the vague statements in her Charge, an EEOC investigation arising from Ms. Walker-Swinton's Charge would extend into the period before April 1, 2018, particularly when Ms. Walker-Swinton's Charge specifically states that the discriminatory events occurred *after* April 1, 2018 (*Id.*). Thus, to the extent Ms. Walker-Swinton has alleged claims arising from incidents that occurred prior to April 1, 2018, such claims are not like or reasonably related to the claims in her EEOC Charge, and therefore she failed to exhaust these claims in her Charge. Accordingly, the Court dismisses with prejudice Ms. Walker-Swinton's Title VII claims arising prior to April 1, 2018. Ms. Walker-Swinton may, however, request that the Court reconsider this ruling, if appropriate, if she has additional evidence pertaining to exhaustion of her claims arising prior to April 1, 2018.

F.        **State Law Contract Claim**

Defendants also move to dismiss Ms. Walker-Swinton's breach of contract claim (Dkt. Nos. 8, at 11; 22, at 9).  They argue that Ms. Walker-Swinton has made "no allegations as to the existence of a valid or enforceable contract, the terms of such a contract, or even the parties to the contract." (*Id.*).  Defendants also assert that Ms. Walker-Swinton did not make a claim for breach of contract in the "cause of action" section of her complaint (*Id.*).  Ms. Walker-Swinton responds that she has plausibly alleged a claim for breach of contract (Dkt. No. 26, at 18).  She argues that she alleged that "she began an employment contract with the defendants in July 2011 at a contracted amount of $30,000" and a breach of that contract resulting in damages (*Id.*).

The Court declines to dismiss Ms. Walker-Swinton's breach of contract claim.   Under Arkansas law, "[i]n order for a contract, express or implied, to exist, there must be:  (a) competent parties; (b) subject matter; (c) legal consideration; (d) mutual agreement; (e) mutual obligations." *Berry v. Cherokee Village Sewer, Inc.*, 155 S.W.3d 35, 38 (Ark. Ct. App. 2004).  After examining the complaint and taking the allegations therein as true, the Court concludes that there are allegations in the complaint that are sufficiently detailed to state a claim for breach of contract. Specifically, Ms. Walker-Swinton alleges that "[d]uring the 2017, academic year, [she] served as the Coordinator for Faculty & Academics in the S.T.A.R.T. program and expected a stipend of $5,000." (Dkt. No. 1, ¶ 45).  She further alleges that "Philander Smith College breached the agreement to pay $5,000 to the Plaintiff; instead [it] paid her $3,000." (*Id.*, ¶ 46).  While it is true that Ms. Walker-Swinton did not include a specific count for breach of contract, the Court finds that these allegations "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555.  Accordingly, the Court declines to dismiss Ms. Walker-Swinton's claims for breach of contract for failure to state a claim upon which relief may be granted.

G.      Requests For Relief

Defendants request that the Court dismiss or strike Ms. Walker-Swinton's requests for relief, including her claim for injunctive relief, punitive damages, and attorneys' fees (Dkt. Nos. 8, at 16; 22, at 13).  Alternatively, defendants state that Ms. Walker-Swinton should be required "to provide a more definite statement as to the bases for her vague and unspecified allegations." (Dkt. Nos. 8, at 16; 22, at 13).

The Court declines to dismiss Ms. Walker-Swinton's requests for relief.  Prayers for relief generally are not appropriate subject matter for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Affiliated Foods Midwest Cooperative, Inc. v. Supervalu Inc.*, Case Nos. 8:16-cv-465, 8:16-cv-466, 2017 WL 2222916, at *2 (D. Neb. May 19, 2017) (citations omitted) (holding that requests for attorneys' fees and injunctive relief are not proper targets for a Rule 12(b)(6) motion).  Furthermore, "punitive damages are a form of relief and not a 'claim' that is subject to a Rule 12(b)(6) motion to dismiss."  *Landon v. Am. Family Mutual Ins. Co.*, 293 F. Supp. 3d 879, 888 (D. S.D. 2017) (quoting *Benedetto v. Delta Air Lines, Inc.*, 917 F. Supp. 2d 976, 984 (D. S.D. 2013)) (citation omitted).  Accordingly, the Court denies PSC and Dr. Smothers' request to dismiss Ms. Walker-Swinton's requests for relief.

The Court also declines to require Ms. Walker-Swinton to provide a more definite statement in support of her requests for relief.  To withstand a motion for more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure, "a pleading must be sufficiently intelligible for the district court to be able to make out one or more potentially viable legal theories on which the claimant might proceed."  5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ*. § 1376 (3d ed.); *see Moore v. Powell*, Case No. 05-6080-cv-SJ-FJG, 2006 WL 44199, at *3 (W.D. Mo. Jan. 9, 2006) (granting motion for more definite statement where plaintiff's

complaint simply sought "Declaratory and injunctive relief").   In her requests for relief, Ms. Walker-Swinton seeks:  (1) a declaratory judgment that defendants violated Title VII and the ACRA; (2) a declaratory judgment that defendants' actions interfered with her rights and were in retaliation for the exercise of her rights; (3) an award of back pay, front pay, pre-judgment and post-judgment interest, liquidated damages, attorneys' fees, costs, and other sums; (4) injunctive relief enjoining defendants from further acts of discrimination and retaliation; (5) compensatory damages; and (6) punitive damages for malice and reckless indifference to her rights (Dkt. No. 1, ¶ 119).  These requests for relief are sufficient to put defendants on notice of the relief Ms. Walker-Swinton is seeking and the grounds upon which she seeks it.  Accordingly, the Court denies defendants' motion for a more definite statement.

### IV.   Motion To Disqualify Counsel And To Strike Complaint As A Nullity

Defendants have filed a motion to disqualify counsel and to strike Ms. Walker-Swinton's complaint as a nullity (Dkt. No. 4).  Defendants argue that because the Arkansas Supreme Court's Committee on Professional Conduct has suspended, on an interim basis, Ms. Bloodman's license to practice law, this Court should issue a reciprocal suspension order pending the outcome of Ms. Bloodman's disbarment proceedings (*Id.*, at 4).   Defendants also request a stay of these proceedings until the Court rules on this issue (Dkt. No. 5, at 7).  Ms. Bloodman responds that the Court should not impose reciprocal discipline because her interim suspension is allegedly unconstitutional, based upon insufficient evidence, and would result in grave injustice (Dkt. No. 17, at 8-14).  Ms. Bloodman also asks the Court to strike an exhibit to defendants' motion to disqualify counsel, arguing that the exhibit "was obviously provided by a ghost writer of this brief." (*Id.*, at 14).

The Court denies defendants' motion to disqualify counsel and to strike Ms. Walker-Swinton's complaint as a nullity (Dkt. No. 4).  "Courts have long recognized their authority to suspend or disbar attorneys, an inherent power derived from the attorney's role as an officer of the court that granted admission."  *In re Hoare*, 155 F.3d 937, 940 (8th Cir. 1998) (citing *In re Snyder*, 472 U.S. 634, 643 (1985).  Further, while state court disbarment proceedings are accorded a high level of deference, such disciplinary actions are "not conclusively binding upon the federal judiciary . . . ."  *In re Hoare*, 155 F.3d at 940 (citations omitted).  Chief Judge Brian Miller scheduled a show cause hearing with Ms. Bloodman on September 21, 2016, to determine whether reciprocal discipline should have been imposed upon her by the Eastern District of Arkansas.  That hearing was postponed, and no other proceeding has been held to suspend or disbar Ms. Bloodman in the Eastern District of Arkansas.  Thus, Ms. Bloodman remains in good standing with the Eastern District of Arkansas.  Accordingly, the Court denies defendants' motion to disqualify counsel and to strike Ms. Walker-Swinton's complaint as a nullity (Dkt. No. 4).

## V.       Motion For Leave To Amend

Also before the Court is Ms. Walker-Swinton's motion for leave to amend original complaint, to which defendants have responded in opposition (Dkt. Nos. 36, 38).  Defendants argue that the motion for leave to amend should be denied because:  (1) the proposed amended complaint is "a nullity;" (2) it violates the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas; and (3) the proposed amended complaint is futile (Dkt. No. 38, at 2-3).

For the following reasons, the Court denies without prejudice Ms. Walker-Swinton's motion for leave to amend original complaint (Dkt. No. 36).  As discussed above, Ms. Bloodman is currently in good standing in this Court, and therefore the proposed amended complaint is not a

nullity.  As for defendants' argument that the proposed amended complaint is futile, the Court declines to rule on this argument given that Ms. Walker-Swinton has failed to provide the Court with a concise statement explaining how the proposed amended complaint is different from the original complaint.  Local Rule 5.5(e) provides that a motion to amend a pleading "must contain a concise statement setting out what exactly is being amended in the new pleading—e.g., added defendant X, adding a claim for X, corrected spelling."  Ms. Walker-Swinton's proposed amended complaint states that she has "independently received and located partial information" since the filing of the complaint and that she "has amended her claims to more accurately narrow and reflect her claims and causes of action." (Dkt. No. 36, ¶¶ 4, 6).  She also asserts that she has amended her complaint to remove mistakes and errors (*Id.*, ¶ 7).  She does not, however, explain how her proposed amended complaint, which contains 149 numbered paragraphs, differs from her original complaint, which contains 122 numbered paragraphs.

Given the length of both Ms. Walker-Swinton's original complaint and proposed amended complaint, it is difficult for the Court to assess whether the proposed amended complaint is futile without some guidance from Ms. Walker-Swinton as to how the proposed amended complaint is substantively different from the original complaint.  The purpose of Local Rule 5.5(e) is to prevent this exact problem from arising.  Accordingly, the Court denies without prejudice Ms. Walker-Swinton's motion for leave to amend original complaint (Dkt. No. 36).  Ms. Walker-Swinton may file another motion for leave to amend that complies with Local Rule 5.5.

### VI.     Motion For A Show-Cause Hearing

Also pending before the Court is defendants' motion for a show-cause hearing (Dkt. No. 29).  Ms. Walker-Swinton has filed a response in opposition (Dkt. No. 34).  In short, defendants assert that Ms. Walker-Swinton inaccurately accuses defendants of "colluding with Executive

Director [Stark] Ligon in drafting the Motion to Disqualify . . . ." (Dkt. No. 30, at 2).  Specifically, defendants point to a statement in a brief filed by Ms. Walker-Swinton where she asked the Court to strike an exhibit that "was obviously provided by a ghost writer of this brief." (Dkt. No. 17, at 14).  Defendants argue that there is no truth to these allegations and that Ms. Walker-Swinton's counsel failed to retract these allegations after a formal request (*Id*., at 3).  Accordingly, defendants ask the Court to enter an order requiring Ms. Walker-Swinton's counsel to appear to show cause as to why the pending motion to disqualify should not be granted (*Id*., at 4).  In response, Ms. Walker-Swinton argues that her "brief does not advance any conclusion of improper conspiracy" and that "Mr. Ligon's name is not mentioned . . . ." (Dkt. No. 35, at 2).

The Court denies without prejudice defendants' motion for a show-cause hearing (Dkt. No. 29).  Defendants assert that the Court should set a show-cause hearing under Rule 11(c)(3) of the Federal Rules of Civil Procedure, which provides that, *sua sponte*, "the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)."  The Court acknowledges that Ms. Walker-Swinton's allegation that a "ghost writer" is involved with this litigation is factually unsupported.  Further, the Court notes that false allegations, unsupported by any evidence, may justify the imposition of sanctions under Rule 11(b).  In the interest of judicial economy, however, the Court will not enter a show-cause order under Rule 11(c)(3).  For these reasons, the Court denies without prejudice defendants' motion for a show-cause hearing (Dkt. No. 29).

## VII.    Other Pending Motions

Finally, also pending before the Court are multiple motions for extension of time to file responses filed by Ms. Walker-Swinton (Dkt. Nos. 10, 18, 32, 33), as well as PSC's motion to strike Ms. Walker-Swinton's unauthorized reply (Dkt. No. 14).  The Court grants Ms. Walker-

Swinton's motions for extension of time (Dkt. Nos. 10, 18, 32, 33).  Further, because motions to strike under Rule 12(f) are disfavored and because motions to strike may only be directed at "pleadings," the Court denies the motion to strike Ms. Walker-Swinton's unauthorized reply (Dkt. No. 14).

### VIII.    Conclusion

It is therefore ordered that:

1.    To the extent set forth above, the Court grants defendants' motions to dismiss (Dkt. Nos. 7, 21).

   a. The Court denies defendants' motions to dismiss to the extent they are based upon insufficiency of the summons and service, and the Court grants Ms. Walker-Swinton leave to amend the summons and serve each defendants with the amended summons and original complaint *nunc pro tunc* on or before October 4, 2019;

   b. the Court dismisses without prejudice Ms. Walker-Swinton's claims against defendants under §§ 1981 and 1983 for failure to state a claim upon which relief may be granted;

   c. the Court dismisses without prejudice Ms. Walker-Swinton's gender discrimination claims under Title VII and the ACRA against Dr. Smothers and Mr. Stevenson in their individual capacities;

   d. the Court dismisses without prejudice Ms. Walker-Swinton's retaliation claims under Title VII against Dr. Smothers and Mr. Stevenson in their individual capacities;

      e.      the Court dismisses without prejudice Ms. Walker-Swinton's age discrimination claims against defendants under Title VII and the ACRA;

      f.      the Court dismisses with prejudice Ms. Walker-Swinton's Title VII claims against defendants based upon her October 2017 demotion and her Title VII claims arising from incidents that occurred prior to April 1, 2018;

      g.      the Court declines to dismiss Ms. Walker-Swinton's retaliation claims under the ACRA against Dr. Smothers and Mr. Stevenson in their individual capacities; and

      h.      the Court declines to dismiss Ms. Walker-Swinton's claims for breach of contract or her requests for relief.

2.      The Court denies defendants' motion to disqualify counsel and to strike Ms. Walker-Swinton's complaint as a nullity (Dkt. No. 4).

3.      The Court denies without prejudice Ms. Walker-Swinton's motion for leave to amend original complaint (Dkt. No. 36).

4.      The Court denies without prejudice defendants' motion for a show-cause hearing (Dkt. No. 29).

5.      The Court grants Ms. Walker-Swinton's motions for extension of time (Dkt. Nos. 10, 18, 32, 33).

6.      The Court denies the motion to strike Ms. Walker-Swinton's unauthorized reply (Dkt. No. 14).

It is so ordered, this the 5th day of September 2019.

Kristine G. Baker
United States District Court Judge

26