IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

PATRICIA WALKER-SWINTON                                           PLAINTIFF

v.                              Case No. 4:18-cv-00886-KGB

PHILANDER SMITH COLLEGE, *et al.*                                 DEFENDANTS

## OPINION AND ORDER

Plaintiff Patricia Walker-Swinton alleges that defendant Philander Smith College ("PSC") discriminated against her based on her gender, harassed her, denied her equal pay, and retaliated against her in violation of 42 U.S.C. § 2000e *et seq*. ("Title VII") and the Arkansas Civil Rights Act, Ark. Code Ann. §§ 16-123-101 *et seq*. ("ACRA").  She also brings a state law claim for breach of contract.  Before the Court is PSC's motion for summary judgment (Dkt. No. 116).  Ms. Walker-Swinton has responded to the motion for summary judgment (Dkt. Nos. 143-148).  PSC also filed a motion to strike Ms. Walker-Swinton's amended response to PSC's statement of undisputed fact ("amended response") and her amended brief in response to PSC's motion for summary judgment ("amended brief") and, alternatively, moves to strike portions of those pleadings (Dkt. No. 154).  Ms. Walker-Swinton responded to the motion to strike (Dkt. No. 165).

Also pending are several motions, including:  PSC's motion to compel the deposition of Reginald Swinton; PSC's motion to quash subpoenas, or alternatively, for protective order; PSC's motion for leave to file reply brief in support of motion to compel deposition of Reginald Swinton; and PSC's motion for leave to file a reply brief in support of motion to quash subpoenas (Dkt. Nos. 86,  88, 120, 124).

The Court grants in part and denies in part the motion to strike (Dkt. No. 154).  The Court grants the motion for summary judgment (Dkt. No. 116).  The Court grants PSC's motions to file

reply briefs, directs PSC to file its' briefs within 14 days from entry of this Order, and has considered its proposed replies when ruling on the pending motions (Dkt. Nos. 120, 124). The Court denies as moot PSC's motion to compel deposition of Reginald Swinton, motion for alternative service or subpoena, and motion for costs and fees (Dkt. No. 86), and PSC's motion to quash subpoenas, or alternatively, for protective order (Dkt. No. 88).

## I.    Background

### A.    Procedural History

In her complaint, Ms. Walker-Swinton alleges that defendants PSC, Dr. Roderick Smothers, Sr., and Dr. Zollie Stevenson, Jr., discriminated against her based on her gender and age, harassed her, denied her equal pay, and retaliated against her in violation of 42 U.S.C. §§ 1981 and 1983 and Title VII. Defendants moved to dismiss certain claims made by Ms. Walker-Swinton for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. Nos. 7, 21).

The Court dismissed without prejudice Ms. Walker-Swinton's claims against defendants under §§ 1981 and 1983 for failure to state a claim upon which relief may be granted (Dkt. No. 41). The Court also dismissed without prejudice the following claims: (1) Ms. Walker-Swinton's gender discrimination and retaliation claims under Title VII against Dr. Smothers and Dr. Stevenson in their individual capacities; (2) Ms. Walker-Swinton's gender discrimination claims under the ACRA against Dr. Smothers and Dr. Stevenson in their individual capacities; and (3) Ms. Walker-Swinton's age discrimination claims against defendants under Title VII and the ACRA (*Id.*). In addition, the Court dismissed with prejudice Ms. Walker-Swinton's Title VII claims against defendants based upon her October 2017 demotion and her Title VII claims arising from incidents that occurred prior to April 1, 2018 (*Id.*). The Court granted defendants Dr.

Smothers and Dr. Stevenson's motion for reconsideration and dismissed Ms. Walker-Swinton's employment-based retaliation claims under the ACRA against Dr. Smothers and Dr. Stevenson in their individual capacities (Dkt. No. 42, 61).   Accordingly, PSC is the sole remaining defendant in the case, and Ms. Walker Swinton's remaining claims against PSC are her claims of gender discrimination,[1] harassment, and retaliation against PSC under Title VII and the ACRA,[2] and her state law claim for breach of contract.

### B.     PSC's Motion To Strike

To determine whether there are any genuine issues of material fact in dispute in this matter, the Court will first consider PSC's motion to strike plaintiff's amended response and amended brief (Dkt. No. 154).   PSC brings its motion under Federal Rules of Civil Procedure 12(f), 56(c)(4), and 56(e) and Local Rule 56.1(b) (*Id*., ¶ 5).   PSC attaches to its motion excerpts from Ms. Walker-Swinton's interrogatory responses, responses to requests for production, and correct second requests for production (Dkt. No. 154-1).   Ms. Walker-Swinton responds in opposition to the

---

[1]  Ms. Walker-Swinton brings a cause of action for "violation of Title VII pay equity" in her complaint (Dkt. No. 1, ¶¶ 87-102).   Ms. Walker-Swinton does not, however, reference the Equal Pay Act, 29 U.S.C. § 206(d) ("Equal Pay Act") (*Id*.).   The Court denied, without prejudice, Ms. Walker-Swinton's motion for leave to amend her complaint (Dkt. No. 41, at 22).   Ms. Walker-Swinton has not sought leave to amend her complaint to bring a claim under the Equal Pay Act. Accordingly, the Court will only consider Ms. Walker-Swinton's claims of unequal pay as part of her Title VII gender discrimination claim.

[2]  In its brief in support of its motion for summary judgment, PSC questions whether Ms. Walker-Swinton has raised an ACRA claim against it in her complaint (Dkt. No. 117, at 22).   While it is true that she did not raise specifically an ACRA claim in the cause of action portion of her complaint, Ms. Walker-Swinton states clearly that her complaint is being brought under the ACRA, and she raises claims of gender discrimination and retaliation (Dkt. No. 1, ¶¶ 1, 3, 66-118). Accordingly, the Court finds her allegations are sufficient to state claims of gender discrimination and retaliation under the ACRA.

motion and attaches several exhibits to her brief in support of her response to the motion to strike (Dkt. No. 165; 166-1, 166-2, 166-3, 166-4, 166-5, 166-6, 166-7, 166-8).[3]

### 1.      Legal Standard

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading. . . any redundant, immaterial, impertinent, or scandalous matter."   An allegation contained in a pleading is immaterial if it "has no essential or important relationship to the claim for relief or the defenses being pleaded."   *CitiMortgage, Inc. v. Just Mortgage, Inc.*, No. 4:09 CV 1909 DDN, 2013 WL 6538680, at *7 (E.D. Mo. Dec. 13, 2013) (internal quotations omitted).   An allegation is impertinent if it "consists of statements that do not pertain, and are not necessary, to the issues in question."   *Id*.   While Rule 12(f) is understood to provide courts with "liberal discretion," the Eighth Circuit Court of Appeals has stated that "striking a party's pleadings is an extreme measure, and, as a result, we have previously held that '[m]otions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted.'"   *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (quoting *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977)).

Local Rule 56.1(b) of the United States District Court for the Eastern and Western Districts of Arkansas requires a non-moving party to supply the Court with a statement of material facts "as to which it contends a genuine issue exists to be tried."   *See Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1088 (8th Cir. 2011).   Federal Rule of Civil Procedure 56(c) requires that "[a] party

---

[3]  Ms. Walker-Swinton argues that the motion to strike should be denied under Federal Rule of Civil Procedure 10 because "counsel failed to cite the correct and complete style of the case."  She further contends that the Court should deny the motion to strike because counsel filed the motion without requesting leave of the Court.  The Court finds that the caption on the motion to strike was proper under Rule 10 and accounted for the Court's dismissal of Dr. Smothers and Dr. Stevenson. Ms. Walker-Swinton does not cite the Court to any precedent requiring PSC to obtain leave of the Court to file a motion to strike, and the Court is not aware of any.  *See* Fed. R. Civ. P. 12(f)(2).  Accordingly, the Court declines to deny the motion to strike for these reasons.

asserting that a fact cannot be or is genuinely disputed must support the assertion by:  (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."   Fed. R. Civ. P. 56(c)(1).

Inadmissible hearsay may not be considered by the Court when deciding whether to grant summary judgment.  *Anda v. Wickes Furniture*, 517 F.3d 526, 534 (8th Cir. 2008).  Further, "[a] party should not be allowed to create issues of credibility by contradicting his own earlier testimony."  *Popoalii v. Correctional Medical Servs.*, 512 F.3d 488, 498 (8th Cir. 2008).  Federal Rule of Civil Procedure 56(c)(2) states that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Federal Rule of Civil Procedure 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

Under Federal Rule of Civil Procedure 56(e), "[i]f a party fails to properly support an assertion of fact as required by Rule 56(c), the court may:  (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order."  Fed. R. Civ. P. 56(e).

This Court will examine in turn each argument PSC makes in support of its motion to strike.

### 2. Analysis: Motion To Strike Amended Pleadings In Their Entirety

PSC first moves to strike in their entirety Ms. Walker-Swinton's amended response and amended brief on grounds that the amended pleadings were filed without leave of the Court and were untimely under the Court's Order granting Ms. Walker-Swinton an extension of time (Dkt. No. 154, ¶ 3).

PSC filed a statement of undisputed material facts in support of its motion for summary judgment (Dkt. No. 118). The Court granted Ms. Walker-Swinton two motions for extension of time to file her response to the motion for summary judgment and ordered Ms. Walker-Swinton to respond to the motion for summary judgment by Saturday, August 1, 2020 (Dkt. Nos. 128, 142).

On August 1, 2020, Ms. Walker-Swinton filed a response to PSC's motion for summary judgment, a 56 page brief in support attaching 45 exhibits, and a 52 page response to PSC's statement of undisputed facts (Dkt. Nos. 143, 144, 145). On Sunday, August 2, 2020, Ms. Walker-Swinton filed a 38 page amended response to PSC's statement of undisputed facts and a 56 page amended brief in support of her response attaching 91 exhibits (Dkt. Nos. 147, 148). PSC contends the Court should strike the amended pleadings because Ms. Walker-Swinton did not request leave of the Court to file her amended pleadings and because they were untimely filed beyond the extended deadline set by the Court.

PSC points to Rules 7.2(b) and 56.1 of the Local Rules of the Eastern and Western Districts of Arkansas to argue, "[t]here is no provision for amended pleadings, particularly untimely ones, without leave of Court." (Dkt. No. 155, at 5). It also notes, however, that Courts have "inherent powers" to "manage their own affairs so as to achieve the orderly and expeditious disposition of

cases." (*Id.* (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017) (citing *Link v. Wabash Ry. Co.*, 370 U.S. 626, 630-31 (1962)))).  PSC urges the Court to exercise its discretion to strike the amended response and amended brief "or otherwise issue an order confirming its refusal to consider any of its contents. . . ." (*Id.*).

In response, Ms. Walker-Swinton argues that she filed timely her response, brief, and response to defendant's statement of undisputed facts on August 1, 2020, and she was not required to seek leave to file the amended brief or amended response to defendant's statement of undisputed facts (Dkt. No. 165, ¶ 8).  In her brief in support of her response to the motion to strike, Ms. Walker-Swinton argues that the "time to respond had not elapsed upon filing the amendments" because the deadline fell on a Saturday and her response was not due until Monday, August 3, 2020." (Dkt. No. 166, at 4-5).  Further, she explains that "the ECF filing system intermittently delayed attempts to attach the voluminous exhibits" and that she filed the amendments to "ensure all was properly filed" (Dkt. No. 166, at 4).

The Court finds that PSC was not prejudiced by Ms. Walker-Swinton filing an amended brief and amended response to PSC's statement of undisputed facts and that the filings were not untimely.  *See* Fed. R. Civ. P. 6(a)(3) (if the clerk's office is inaccessible on the last day of filing, "then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday").  Accordingly, the Court denies PSC's motion to strike to the extent it seeks to strike the amended brief and response to statement of undisputed facts in their entirety.

### 3.     Analysis:   Motion To Strike Specific Portions Of Amended Pleadings And Exhibits

PSC also asks the Court to strike particular portions of Ms. Walker-Swinton's amended brief or amended response and a number of exhibits attached to her amended brief in response to the motion for summary judgment (Dkt. No. 154, ¶ 5).  PSC argues that portions of Ms. Walker-

Swinton's response to the statement of facts lack "any citation to record evidence, are based on inadmissible hearsay, or otherwise cite material that is inconsistent with the purposes for which they have been cited or are irrelevant and erroneous for the purposes of summary judgment" (*Id*. ¶ 4).

Ms. Walker-Swinton responds generally that PSC omitted from its motion any discussion of the Rule 12(f) standard and failed to satisfy the requirements of the rule (Dkt. No. 166, at 3-4, 12). She asserts that she complied with Federal Rule of Civil Procedure 56 and "presented evidence that disagreement exists requiring submission to a jury." (Dkt. No. 166, at 5-7). Ms. Walker-Swinton argues that she has "properly supported an assertion of fact and properly addressed Defendant's assertion of fact by 56(c)," and she requests that the Court, under Federal Rule of Civil Procedure 56(e)(1), give her an opportunity to "properly support or correct" any "typographical errors, incorrect numberings, exhibit miscites, or clarification of form needed" (Dkt. No. 166, at 7). Ms. Walker-Swinton contends generally that, under Federal Rule of Civil Procedure 56(c)(4), the Court may consider affidavits or declarations; she argues that the Court should not strike the affidavits included with her amended brief in support of her response to the motion for summary judgment (*Id*.).

### a.   Information Not Provided In Discovery

#### *i.*   Affidavits

PSC claims that Ms. Walker-Swinton relied on several affidavits in her response to the statement of undisputed facts and the brief from multiple individuals who were not disclosed during discovery including exhibits 27-30, 34-36, 39, 42, 48, 52-53, 65, and 66 (Dkt. Nos. 154, ¶ 5(a); 155, at 6-7).

In an interrogatory, PSC asked Ms. Walker-Swinton to provide the name of any person she intends "to call as a witness at trial, including, but not limited to, lay and expert witnesses, and for each such person, provide a summary of the topics on which each such person is expected to testify." (Dkt. No. 154-1, at 5). Ms. Walker-Swinton objected but, without waiving her objection and reserving the right to supplement the response, Ms. Walker-Swinton provided a list of names (Dkt. No. 154-1, at 6–15). PSC also asked Ms. Walker-Swinton in a request for production of documents to "produce all affidavits, sworn statements, notes, and other documents sent to, received from or otherwise relating to any person you intend to call as a witness at trial, either in person, though deposition testimony, or through affidavit." (Dkt. No. 154-1, at 22). Ms. Walker-Swinton responded that she currently had no affidavits and reserved the right to supplement (*Id*.). PSC asserts that Ms. Walker-Swinton did not amend the list to include the individuals who provided affidavits attached as exhibits 27-30, 34-36, 39, 42, 48, and 52-53 to her amended brief (Dkt. No. 155, at 7). PSC also states that Ms. Walker-Swinton also never amended her response to the request for production to produce the affidavits attached to her amended response (Dkt. No. 154-1, at 6-7).

Ms. Walker Swinton states that "[t]he identities and names of all the persons identified" were "known by the Defendant." (Dkt. No. 166, at 8). She further asserts that the affidavits submitted were not hearsay because they were not "offered to prove the truth of the matter asserted in such statements." (*Id*.).

The Court finds that PSC has been aware that students AP, KC, and JW were potential witnesses throughout this case and that any failure to disclose these witnesses by Ms. Walker-Swinton was harmless (Dkt. Nos. 116-24, 116-25, 116-26). The Court denies PSC's motion to strike their affidavits (Dkt. Nos. 148-27, 148-28, 148-29). PSC has also been aware of the

involvement of Thurlon Weaver, Athletic Director at Philander Smith College from Fall 2011 through Spring 2015, and the Court finds that any failure of Ms. Walker-Swinton to disclose Coach Weaver as a witness is harmless (Dkt. Nos. 148-3, at 246; 166-2).  The Court denies PSC's motion to exclude his affidavit (Dkt. No. 148-34).

PSC moves to strike the affidavit of PL, who was a member of the Panther Dolls (Dkt. No. 148-42; 154, at 2).  PSC also seeks to strike the affidavit of KA, who was a student in the composition class taught by Ms. Walker-Swinton at the time of the incident with John Doe[4] (Dkt. Nos 148-48; 154, at 2).  The Court denies PSC's motion to exclude the affidavits of PL and KA. In her responses to discovery, Ms. Walker-Swinton clearly alerted PSC that "everyone who asked me about joining the Panther Dolls Dance Team" and her "composition students" were "persons with whom [Ms. Walker-Swinton] has communicated and/or from whom [Ms. Walker-Swinton] has obtained statements (written or oral) or written documents relating to the factual allegations contained in the Complaint." (Dkt. No. 166-6, at 2-5).

PSC moves to strike the affidavits of AC and PL (Dkt. No. 148-30), Jason Roberson (Dkt. No. 148-35), Justin Roberson (Dkt. No. 148-36), and TW (Dkt. No. 148-39).  Ms. Walker-Swinton asserts that PSC was aware that AC and PL were waiting outside the room where Ms. Walker-Swinton was meeting with Dr. Dakota Doman, Dr. Stevenson, and PSC's attorney on April 10, 2018 (Dkt. No. 166, at 9).  Ms. Walker-Swinton also asserts that PSC was aware that Jason and Justin Roberson were assistant coaches of the Panther Dolls with Ms. Walker-Swinton.  Ms. Walker-Swinton also contends that PSC was aware of and had the opportunity depose TW, but PSC chose not to depose him *(Id.*, at 10)*.  The Court denies PSC's motion to exclude the affidavits

---

[4] John Doe is also sometimes referred to as JM throughout this Order.

of AC and PL (Dkt. No. 148-30), Jason Roberson (Dkt. No. 148-35), Justin Roberson  (Dkt. No. 148-36), and TW (Dkt. No. 148-39).

PSC moves to strike the affidavits of Stephanie Hall (Dkt. No. 148-52) and Angelia Alexander (Dkt. No. 148-53) because the witnesses and their affidavits were not disclosed during discovery.  Under the Federal Rules of Civil Procedure, each party must "supplement or correct its disclosure or response. . . in a timely manner. . . if the additional or corrective information has not otherwise been made known to the other parties during the discovery process. . . ."  Fed. R. Civ. P. 26(e)(1)(A).  In the event a party fails to supplement its discovery responses, "the party is not allowed to use that information. . . unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Ms. Walker-Swinton failed to supplement her discovery responses to provide the names of witnesses and affidavits she attached to her amended response.  Ms. Walker-Swinton has not established that her failure as to these specific affidavits was justified or harmless.  Accordingly, the Court grants PSC's motion to strike the affidavits of Stephanie Hall (Dkt. No. 148-52) and Angelia Alexander (Dkt. No. 148-53).

### ii.    Medical Records

PSC moves to strike the documents from Motivated Minds generated in 2018 and Arkansas Heart Hospital obtained in December 2019 that are attached as exhibits to Ms. Walker-Swinton's amended brief (Dkt. Nos. 148-65, 148-66).  PSC contends that, on April 1, 2020, when Ms. Walker-Swinton provided her responses to PSC's second set of requests for production she did not provide these documents in spite of PSC's request that Ms. Walker-Swinton provide her medical records (*Id.*, at 7).  Ms. Walker-Swinton responds that she provided PSC with a signed medical authorization release form so that it could obtain her medical records (Dkt. No. 166, at 13; 166-8).  The Court finds that Ms. Walker-Swinton's failure to provide these documents in response to

PSC's request for production was justified given that she had provided PSC with a signed medical authorization release form, and the Court denies PSC's motion to strike the exhibits from Motivated Minds and Arkansas Heart Hospital (Dkt. No. 148-65, 148-66).

### *iii.* Documents

PSC moves to strike exhibits 67, 68, 76, and 79 attached to Ms. Walker-Swinton's amended brief because the documents were never produced in discovery (Dkt. No. 155, at 8). The Court strikes exhibit 68 to the amended brief because it is a blank page with the number "3" written on it (Dkt. No. 148-68). The Court finds that Ms. Walker-Swinton's failure to provide exhibit 67 (an email from Ms. Walker-Swinton to her academic advisor dropping a class), exhibit 76 (Ms. Swinton's biography from a website), and exhibit 79 (a page from a website regarding remedial courses) was harmless or justified because the documents were publicly available. The Court denies PSC's motion to strike these exhibits (Dkt. Nos. 148-67, 148-76, 148-79).

### b.    Lack Of Citation To Record Evidence

PSC moves to strike all paragraphs in Ms. Walker-Swinton's response to PSC's statement of disputed facts which it contends lack supporting citation to record evidence. Specifically, PSC moves to strike paragraphs 1, 4, 5, 7, 9-25, 27, 34, 45, 47-49, 51-55, and 73 (Dkt. No. 154, ¶ 5(b)). Having examined these paragraphs, this Court concludes that Ms. Walker-Swinton has failed to comply with Federal Rule of Civil Procedure 56(c)(1) in regard to paragraphs 4, 5, 7, 9-25, 27, 34, 45, 47-49, 52, and 73 which include no citations to record evidence. Therefore, the Court grants PSC's motion and strikes these paragraphs of Ms. Walker-Swinton's amended response (Dkt. No. 147, ¶¶ 4, 5, 7, 9-25, 27, 34, 45, 47-49, 52, 73). The Court has reviewed Ms. Walker-Swinton's amended response and also finds that Ms. Walker-Swinton has failed to provide a supporting citation to record evidence to support her denial of paragraphs 35-42, 59-61, 84, and 138.

Accordingly, the Court grants PSC's motion to strike Ms. Walker-Swinton's amended response to these paragraphs (Dkt. No. 147, ¶¶ 35-42, 59-61, 84, and 138).

With respect to paragraph 1 of Ms. Walker-Swinton's amended response, Ms. Walker-Swinton cites to exhibit "3A" to deny that she was hired by PSC "as an English instructor in 2011." (Dkt. No. 147, ¶ 1).  She asserts, citing exhibit "3A," that she was "hired as an English and reading coach." (*Id*.).  PSC moves to strike the response on grounds that there is no exhibit "3A" in the record evidence before the Court.  Ms. Walker-Swinton responds that she was referring to exhibit "3" and asks the Court not to strike the response to paragraph 1 (Dkt. No. 166, at 15).  The Court acknowledges that there is no exhibit 3A to Ms. Walker-Swinton's amended response but notes that PSC cites to Ms. Walker Swinton's complaint as its source for this statement of fact and that the complaint, in fact, states that she was hired as a "Reading and English coach." (Dkt. No. 1, ¶¶ 19, 21).  For these reasons, the Court denies PSC's motion to strike Ms. Walker-Swinton's amended response to paragraph 1 of PSC's statement of undisputed facts (Dkt. No. 147, ¶ 1).

With respect to paragraph 51 of Ms. Walker-Swinton's amended response, Ms. Walker-Swinton cites to her affidavit and deposition for the proposition that she has no "personal knowledge about a video of a cafeteria fight nor was she involved in a cafeteria fight." (Dkt. No. 147, ¶ 51).  Ms. Walker-Swinton's response does not support her denial of the statement of undisputed fact in paragraph 51 which states that "[f]rom the video of the cafeteria fight, Dr. Doman was able to identify AP as one of the assailants, and AP was immediately suspended from the College. *Doman Decl*. (Ex. 17) ¶ 21." (Dkt. No. 147, ¶ 51).  Ms. Walker-Swinton also responds that "Dr. Doman's declaration of June 2020 alarmingly comes two years following Ms. Swinton's attack in the classroom by student JM.  Surprisingly in Doman's declaration, he mysteriously creates information that he had not provided in his first statement following her attack April 9,

2018." (Dkt. No. 147, ¶ 51).  This response does not comply with Federal Rule of Civil Procedure 56(c) because it does not cite to evidence in the record that refutes the statement of fact. Accordingly, the Court grants PSC's motion to strike paragraph 51 of Ms. Walker-Swinton's amended response to  PSC's statement of undisputed facts.

With respect to paragraphs 53, 54, 55, and 56, Ms. Walker-Swinton cites to her affidavit and deposition, and the affidavits of AP, KC, and JW, as support for her assertion that she "was not involved in any attack on JM or TG. . . .  Further Ms. Swinton has no knowledge or involvement in any disciplinary actions related to any students." (Dkt. No. 147, ¶ 53).  Paragraphs 53, 54, 55, and 56 of PSC's statement of undisputed facts neither state that Ms. Walker-Swinton was "involved" in an attack on John or Jane Doe[5] nor that she had knowledge or involvement in any disciplinary actions taken.  Further Ms. Walker-Swinton's response does not support her denial of the statement of undisputed fact in these paragraphs which deal with PSC's investigation of the cafeteria incident, PSC's determination that JW and KC were involved, the familial relationships to Ms. Walker-Swinton of the students who were charged with their conduct in the cafeteria on April 9, 2018, and the disciplinary actions PSC took as a result of the cafeteria incident (Dkt. No. 147, ¶¶ 53-56).  In the affidavits of JW and KC, attached to Ms. Walker-Swinton's amended brief, both JW and KC admit to getting into "an altercation" with John Doe, and KC further states that Jane Doe "jumped him."  Regardless, the affidavits do not contradict the statements of fact PSC asserts in these paragraphs in order to comply with Federal Rule of Civil Procedure 56(c), and the Court grants PSC's motion to strike Ms. Walker-Swinton's amended response to paragraphs 53 through 55 of PSC's statement of undisputed facts.

---

[5] Jane Doe is also sometimes referred to as TG in this Order.

Ms. Walker-Swinton denies PSC's statement that Dr. Stevenson never even received a copy of her police report (Dkt. No. 147, ¶ 89).  As support for her denial, Ms. Walker-Swinton cites to her affidavit and states that she "sent an email to Stevenson, Smothers, Chief Williams, her supervisor Sheer, Doman, and others with the police report number as instructed by Chief Williams. . . ." (*Id.*).  The Court has reviewed Ms. Walker-Swinton's affidavit and does not find support for her assertion (Dkt. No. 148-4).  Her affidavit does not contradict the statement of PSC in paragraph 89 in order to comply with Federal Rule of Civil Procedure 56(c), and the Court grants PSC's motion to strike Ms. Walker-Swinton's amended response to paragraph 89 of PSC's statement of undisputed facts.

Ms. Walker-Swinton denies PSC's statement that she "never complained about gender-based discrimination during the course of the investigation" (Dkt. No. 147, ¶ 83).  As support for her denial of this statement, Ms. Walker-Swinton cites to exhibits 52-56 of her amended brief (*Id.*).  Exhibits 52 and 53 to Ms. Walker-Swinton's amended brief are affidavits that are irrelevant to PSC's statement and that are stricken from the record for reasons stated below.  According to Ms. Walker-Swinton, exhibit 54 is a 2014 communication exchange with Terry Wallace, Vice President of Fiscal Affairs at that time, regarding the "unfair treatment of the Cheer and Dance Teams and its Members" (*Id.*).  Exhibit 56 includes copies of text messages Ms. Walker-Swinton exchanged with "Greenwood" in September 2016.  None of the cited exhibits supports Ms. Walker-Swinton's denial of PSC's statement that she did not complain about "gender-based discrimination *during the course of the investigation.*" (*Id.*).  Consequently, the Court grants PSC's motion to strike Ms. Walker-Swinton's amended response to paragraph 83 of PSC's statement of undisputed facts.

Ms. Walker-Swinton denies PSC's statement that "[t]he Panther Dolls were never recognized by the NAIA as a collegiate sport during Plaintiff's employment." (Dkt. Nos. 116-20, at 16; 147, ¶ 108). She cites the following lines from her deposition in support of her denial: "Q. Have they been registered with NAIA? A. I have no idea. That was never a conversation." (Dkt. No. 116-1, at 14). Ms. Walker-Swinton's citation to her deposition does not support her denial of paragraph 108 of PSC's statement of undisputed facts, and the Court grants PSC's motion to strike Ms. Walker-Swinton's amended response to paragraph 108 of PSC's statement of undisputed facts.

### c.    Lack Of Pinpoint Citation To Deposition Transcript

PSC also moves to strike all paragraphs in Ms. Walker-Swinton's amended response and brief that only cite to an exhibit number for a deposition but do not point to a specific page number on which the assertion is based (Dkt. No. 154, ¶ 5(c)). The Court denies PSC's motion to strike on this basis.

### d.    Denial Of Facts Unsupported By Citation

PSC moves to dismiss all paragraphs in the amended response that refer to exhibit 3A because Ms. Walker-Swinton's amended brief does not attach an exhibit 3A (Dkt. No. 154, ¶ 5(a)). Ms. Walker-Swinton responds that she was referring to exhibit "3," which is her deposition (Dkt. No. 166, at 15). Ms. Walker-Swinton's amended response to paragraph 88 cites to Exhibit 3A to support her denial of PSC's statement of fact that, "[t]he College typically processes contract renewals in mid-to-late June, or about three months prior to the expiration of the termination of the Faculty Contract. *See Ex. 27, 38*; *see also Ex. 2*, at Bates 1." (Dkt. No. 147, ¶ 88). Ms. Walker-Swinton responds, "[d]eny. In 2016, Smothers started issuing contracts in May, Smothers did not issue Ms. Swinton's contract for 2017-18 school year until October 17, 2017. (Ex. 3A *Ms.*

16

*Swinton's Contracts.*)" (*Id.*).    The Court has reviewed exhibit 3 and has not found deposition testimony from Ms. Walker-Swinton supporting the statement in paragraph 88 to her amended response (Dkt. No. 148-3).  Accordingly, the Court grants PSC's motion to strike paragraph 88 of Ms. Walker-Swinton's amended response (Dkt. No. 147, ¶ 88).

PSC moves to strike Ms. Walker-Swinton's response to paragraph 81 on the same grounds, but Ms. Walker-Swinton does not cite to exhibit 3A in her response to paragraph 81.  Instead, she cites to exhibit 33, which she claims includes "November 30, 3017 Faculty Senate Minutes" but is actually the deposition transcript of Dr. Smothers (Dkt. Nos. 147, ¶ 81, 148-33).  Accordingly, the Court finds Ms. Walker-Swinton has not supported her denial of paragraph 81 with a valid citation to record evidence, and it will grant PSC's motion to strike Ms. Walker-Swinton's amended response to paragraph 81 (Dkt. No. 147, ¶ 81).

PSC moves to strike any pleading that refers to exhibits 17 and 18 because the descriptions do not match the exhibits (Dkt. No. 154, ¶ 5(d)).  The Court has reviewed the amended response and has not found any references to exhibits 17 or 18.  The Court denies PSC's motion to strike on this ground.

PSC moves to strike Ms. Walker-Swinton's amended response to paragraph 66 because it refers to exhibits 17 and 18 which do not match the exhibits (*Id.*, ¶ 5(d)).  Ms. Walker Swinton denies paragraph 66 in her amended response and cites as support for her denial "(Ex. 17) *Subpoena to Office of Disability Services*, *Ex. 18. Subpoena to Office of Registrar Technology Department Subpoena.*" (Dkt. No. 147, at 10-11).[6]  Exhibits 17 and 18 to Ms. Walker-Swinton's

---

[6]  Ms. Walker-Swinton, in her amended response at various points, misses numbering certain paragraphs.  There is no indication for paragraph 66 in her amended response, but she addresses the substance of the allegations in paragraph 66 on pages 10 and 11 of her amended response (Dkt. No. 147).

amended brief are, in fact, copies of text messages that do not support Ms. Walker-Swinton's denial of the allegations in paragraph 66.  The Court grants PSC's motion to strike Ms. Walker-Swinton's amended response to the allegations in paragraph 66.

### e.  Denial Of Facts Supported By Ms. Walker-Swinton's Documentation

PSC moves to strike all paragraphs in Ms. Walker-Swinton's amended response in which the denial of the asserted fact is supported only by Ms. Walker-Swinton's own documentation for that response, including paragraphs 17-19, 22, and 24 (*Id.*, 154, ¶ 5(d)).  The Court need not address this specific objection because the Court has already found these paragraphs of the amended response should be stricken; Ms. Walker-Swinton's denial of these statements of fact is not supported by record evidence in order to comply with Federal Rule of Civil Procedure 56(c).

### f.  Lack Of Record Evidence Admissible At Trial

PSC moves to strike "all paragraphs [in Ms. Walker-Swinton's amended response] that rely on nothing more than self-serving, unsubstantiated hearsay, or are otherwise not supported by the materials cited therein, including Response 67." (*Id.*, ¶ 5(e)).  PSC also moves to strike all portions of the amended brief that are not supported by admissible evidence such as "two pages with boxes referring to unrelated women," all references to exhibit 21 (police report), 1-32, and 82-84 (unsupported drawings), and 91 (*Id.*, ¶ 5(f)).

"The district court must base the determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial." *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923 (8th Cir. 2004).  The Court will examine each paragraph and exhibit PSC moves to strike to determine whether Ms. Walker-Swinton has met her burden of establishing that the evidence is potentially admissible at trial.

The Court has reviewed Ms. Walker-Swinton's amended response, and it appears that her amended response to paragraph 67 of PSC's statement of undisputed facts is inaccurately numbered as her response to paragraph 65 (Dkt. No. 147, at 17).  Ms. Walker-Swinton objects to PSC's statement in paragraph 67 that "Dr. Smothers recruited JM and TG to the college." (*Id*.).  Ms. Walker-Swinton cites to the deposition testimony and affidavit of C.J. Duvall to support her denial of this portion of paragraph 67.  PSC moves to strike the response on grounds that the deposition testimony is based on unsubstantiated hearsay and that the affidavit does not support Ms. Walker-Swinton's denial of the stated fact.

The Court has reviewed Mr. Duvall's deposition testimony and his affidavit.  PSC is correct that the affidavit does not support Ms. Walker-Swinton's denial of the statement, "Dr. Smothers recruited [John Doe] and [Jane Doe] to the college."  As to the deposition testimony, Mr. Duvall testified:   "T. B[ates] is an employee of Philander Smith College.  T. B[ates] was a student, an alumni of Philander Smith College. . . .   And when I was visiting the campus in 2018, she introduced me to John Doe.  She said, 'Want you to meet one of my recruits.'" (Dkt. No. 116-45, at 23).  When asked about Dr. Smothers' testimony that John Doe was one of his recruits, Mr. Duvall testified:  "I can't speak for Dr. Smothers . . . .  I can just say that . . . Ms. Bates said to me that, 'I want you to meet one of my recruits.'" (*Id*., at 24).   Mr. Duvall's deposition testimony on this point is hearsay.

Ms. Walker-Swinton asserts that Mr. Duvall's deposition testimony is not being offered for the truth of the matter asserted (Dkt. No. 166, at 16-17 (citing *Reynolds v. Steward St. Elizabeth's Medical Center of Boston, Inc.*, 364 F. Supp. 3d 37 (D. Mass. 2019)).  Ms. Walker-Swinton does not accompany this assertion with an explanation of why Mr. Duvall's deposition testimony is being offered, if not for the truth of the matter.  Moreover, Mr. Duvall's testimony is

sufficient for Ms. Walker-Swinton to deny the statement that "Dr. Smothers recruited JM and TG to the college" only if it is offered for the truth of the matter asserted, that Ms. Bates, not Dr. Smothers, recruited these students to PSC.   Accordingly, the testimony being offered by Ms. Walker-Swinton is hearsay for which Ms. Walker-Swinton has not established an exception.   For these reasons, the Court will strike Ms. Walker-Swinton's response to paragraph 67.

PSC moves to strike "two pages with boxes referring to unrelated women." (Dkt. No. 154, ¶ 5(f).   The "boxes" appear in Ms. Walker-Swinton's amended brief and purport to list employees who "filed EEOC Charges of Discrimination based on other than race" (Dkt. No. 148, at 42-44).   PSC states the "boxes" are not supported by admissible evidence (Dkt. No. 154, at 3).   Ms. Walker-Swinton responds that, "[t]he [c]hart reflects names of Defendant's former African American female employees, who filed discriminatory complaints against the defendant.   Hudson's name was disclosed in discovery in Plaintiff's Answers to Integratory No. 2.   *(Ex. 6, p. 5)*   The chart was a demonstrative measure to represent the pattern of conduct demonstrated by the Defendants.   It is not offered for the truth of any matter therein.   The defendant has established a disturbing pattern and practice of terminating African-American employees who complain about race discrimination.   The chart contains those employees who alleged race discrimination, inter alia.   The chart should not be stricken." (Dkt. No. 166, at 17-18).

Ms. Walker-Swinton has not pointed the Court to any admissible evidence in the record at this time that would support the statements made in the charts on pages 42 through 44 of her amended brief.   Accordingly, the Court strikes the charts (Dkt. No. 148, at 42-44).[7]

---

[7]   The Court notes that, while there are multiple charts or "boxes" on pages 42 through 44 of the amended brief, the charts repeat information for what appears to the Court to be only three alleged EEOC Charges of discrimination.

PSC also moves to strike exhibit 21 to the amended brief, a Little Rock Police Department Incident Report dated April 13, 2018 (Dkt. No. 148-21), as "not supported by admissible evidence" (Dkt. No. 154, at 3).  Ms. Walker-Swinton responds that the police report is "not inadmissible hearsay because it is not offered for the truth of the matters asserted therein, but rather to establish the existence of an incident involving the Plaintiff and perpetrator JM on April 9, 2018." (Dkt. No. 166, at 9).  Also, Ms. Walker-Swinton points out that PSC offered the same police report as an attachment to its motion for summary judgment (Dkt. No. 116-21).

Generally, police reports are admissible "to the extent to which they incorporate firsthand observations of the officer."  *United States v. Taylor,* 462 F.3d 1023, 1026 (8th Cir. 2006) (quoting Fed. R. Evid. 803 advisory committee's note); *see Foster v. Gen. Motors Corp.,* 20 F.3d 838, 839 (8th Cir. 1994) (per curiam) (holding that police report prepared by investigating officer who was experienced in such investigations, conducted a neutral investigation shortly after the accident occurred, and prepared the report the next day was "clearly admissible under the hearsay exception for public records").  Further, the report has been offered as evidence in the summary judgment record by both parties, and it appears to the Court that it is not being offered to prove the truth of the matter asserted but rather to establish that the Little Rock Police Department investigated an April 9, 2018, incident at PSC involving Ms. Walker-Swinton and John Doe.  The Court denies PSC's motion to strike the report (Dkt. Nos. 116-21; 148-21).

PSC moves to strike the medical records submitted as exhibits 65 and 66 because they "contain inadmissible hearsay and have not been authenticated as required under Rule 56." (Dkt. No. 155, at 14).  Ms. Walker-Swinton responds that the records are "not being offered for the truth of the matters asserted therein, but rather to establish the existence of medical treatment." (Dkt. No. 166, at 19).  Ms. Walker-Swinton also argues the medical records are admissible under Federal

Rules of Evidence 803(4) and 803(6) and "may be considered on a motion for summary judgment." (*Id*.). The Court denies PSC's motion to strike the medical records as unauthenticated hearsay. Ms. Walker-Swinton has met her burden of establishing that the records are evidence, that if properly authenticated, may be admissible at trial.

PSC moves to strike the drawings attached as exhibits 31-32 and 82-84 and the photograph attached as exhibit 91 to Ms. Walker-Swinton's amended brief as "not supported by admissible evidence" (Dkt. No. 154, ¶ 5(f)). Ms. Walker-Swinton argues that the exhibits are admissible (Dkt. No. 166, at 18). With respect to exhibit 31, Ms. Walker-Swinton claims that this is a "chart of the administrative hearing reflecting the three (3) males who conducted and participated in making the decision of the outcome of the hearing. *(Ex. 3, p. 127-128, Swinton depo.)*" (*Id*.). With respect to exhibit 32, Ms. Walker-Swinton states that this is a "picture of Defendant's attorney Abtin Mehdizadegan with Stevenson and Doman, the three (3) males Plaintiff identified as participating in the administrative hearing. *(Ex. 3, p. 127-128, Swinton depo.)*" (*Id*.). With respect to exhibits 82-84, Ms. Walker-Swinton states that these are "[d]iagrams reflecting the years the Plaintiff was discriminated and treated unfairly by Defendant males**.** *(Ex. 23, p. 127, 128, Stevenson depo.)*" (*Id*.). Ms. Walker-Swinton claims that none of the exhibits should be stricken (*Id*.).

The Court views exhibit 31 as a potential demonstrative exhibit that could potentially be admissible at trial if Ms. Walker-Swinton were to testify regarding the exhibit at trial. At her deposition, Ms. Swinton testified to a meeting in Spring 2018 with the individuals named in exhibit 31 (Dkt. No. 148-3, at 128-129). Ms. Walker-Swinton has met her burden of establishing that exhibit 31 could potentially be admissible at trial, and, at this stage, the Court denies PSC's motion to strike exhibit 31.

Exhibit 32 is not, as Ms. Walker-Swinton represents in her response to the motion to strike, a "picture of Abtin Mehdizadegan with Stevenson and Doman" but is a potential demonstrative exhibit that references Summer 2015 and Chris Smith, Special Assistant to the President (Dkt. No. 148-32; 166, at 18). The exhibit is not supported by Ms. Walker-Swinton's deposition testimony regarding a meeting in April 2018. Accordingly, Ms. Walker-Swinton has not met her burden of establishing that exhibit 32 could potentially be admissible at trial, and the Court grants PSC's motion to strike the exhibit.

Exhibits 82 through 84 are potential demonstrative exhibits. To argue that the exhibits are admissible, Ms. Walker-Swinton points to the deposition of Dr. Stevenson (Dkt. No. 166, at 18). The portion of Dr. Stevenson's deposition testimony referenced by Ms. Walker-Swinton appears to the Court to have no relationship to potential demonstrative exhibits 82 through 84 attached to Ms. Walker-Swinton's amended brief. Accordingly, Ms. Walker-Swinton has not met her burden of establishing that the exhibits 82, 83, and 84 could potentially be admissible at trial, and the Court grants PSC's motion to strike the exhibits.

PSC moves to strike exhibit 91, which is a group photograph, because it is "unsubstantiated" (Dkt. No. 154, at 5(f)). Ms. Walker-Swinton responds that the photograph is not inadmissible hearsay because it is not offered for the truth of the matter asserted (Dkt. No. 166, at 18). The Court views exhibit 91 as an exhibit that could potentially be admissible at trial, and, at this stage, the Court denies PSC's motion to strike exhibit 91.

### g.     Erroneous And Unresponsive Responses

PSC moves to strike "all erroneous and unresponsive Responses" (Dkt. No. 155, at 15-16). PSC specifically references, for example, Ms. Walker-Swinton's amended responses to paragraphs 90, 91, and 94 which relate to comparators (Dkt. No. 155, at 15-16). PSC states that Ms. Walker-

Swinton has "failed to identify comparators because none of the other individuals who were not terminated meet the rigorous test for comparators at the pretext stage." (*Id*.). The Court denies PSC's motion to strike Ms. Walker-Swinton's partial denial of paragraph 91. The Court grants PSC's motion to strike Ms. Walker-Swinton's amended responses to paragraphs 90, 94, and 106 because the responses do not relate to the fact being asserted (Dkt. No. 147, ¶¶ 90, 94).

### h.      Conclusion

For these reasons, the Court grants, in part, and denies, in part, PSC's motion to strike portions of Ms. Walker-Swinton's amended response to defendant's statement of undisputed material facts (Dkt. No. 154). The Court grants PSC's motion to strike paragraphs 4-5, 7, 9-25, 27, 34, 35-42, 45, 47-49, 51-55, 59-61, 66-67, 73, 84, 88-90, 99, 106, 108, and 138 of Ms. Walker-Swinton's amended response (Dkt. No. 147). The Court grants PSC's motion to strike exhibits 148-52, 148-53, 148-82, 148-83, and 148-84 attached to Ms. Walker-Swinton's amended brief. The Court also grants PSC's motion to strike the charts or boxes on pages 42 through 44 of Ms. Walker-Swinton's amended brief. The Court denies all other objections made by PSC that the Court does not specifically grant.

### C.      Factual Background

PSC filed a statement of undisputed material facts (Dkt. No. 118). Ms. Walker-Swinton filed a response and an amended response to PSC's statement of undisputed material facts (Dkt. Nos. 145, 147). The following facts are taken from both PSC's statement of undisputed material facts and the portions of Ms. Walker-Swinton's amended response that have not been stricken, except where specified by citation. To the extent the parties disagreed on purported statements of undisputed material fact, the Court has not deemed those facts undisputed. In reaching a determination on the pending motion for summary judgment, the Court has reviewed the record

evidence in this case in the light most favorable to Ms. Walker-Swinton, as the Court is required to do at this stage.

### 1. Ms. Walker-Swinton's Employment With PSC

PSC hired Ms. Walker-Swinton in 2011 as an English and reading coach (Dkt. No. 147, ¶ 1). Ms. Walker-Swinton's employment with PSC was governed by a term (non-tenure) Faculty Contract (*Id.*, ¶ 2). According to PSC's faculty handbook, "[t]he appointments of term faculty personnel are at-will, and personnel may be terminated by the College prior to the expiration of the original contract period as described in Dismissal for Cause, or as otherwise set forth in their contract." (*Id.*, ¶ 3). "In the case of faculty who are serving on term appointments, there is neither an expectation nor a guarantee of reappointment beyond the terms of their contract." (*Id.*, ¶ 4). Under the terms of her contracts, Ms. Walker-Swinton was to comply with PSC's policies contained in its faculty handbook, course catalog, presidential proclamations, or future policy publications—including PSC's prohibitions against harassment and discrimination (*Id.*, ¶ 5).

PSC's mission is to graduate academically accomplished students who are grounded as advocates for social justice, determined to change the world for the better (*Id.*, ¶ 6). PSC prohibits harassment and discrimination on the basis of race, color, gender, religion, national origin, ancestry, age, marital status, disability, sexual orientation, veteran status, or any other protected status in all of its activities (*Id.*, ¶ 7). The faculty handbook is publicly available on PSC's website (*Id.*, ¶ 8).

Ms. Walker-Swinton acknowledged that PSC also prohibits retaliation against any individual for making a good-faith complaint regarding discrimination (*Id.*, ¶ 10). While she could not recall receiving PSC's equal employment opportunity-oriented policies, Ms. Walker Swinton testified that it was possible that she received those documents (*Id.*, ¶ 11). Ms. Walker-Swinton's

receipt of the policies is reflected in her executed acknowledgment that she received the policies (*Id.*). PSC's anti-discrimination policies—along with its course catalog and student handbook—also apply to preclude discrimination or harassment against students at PSC (*Id., ¶* 12).

The faculty handbook defines harassment as including "the use of words, signs, jokes, pranks, intimidation, physical contact, or violence.. . . Speech or other expression constitutes harassment if it is:. . . [i]ntended to insult or stigmatize an individual or an identifiable group of individuals on the basis of age, ancestry, disability, national or ethnic origin, race, religion, gender, or sexual orientation"; or "[a]ddressed directly to (though not necessarily in the presence of) the individual(s) whom it insults or stigmatizes[.]" (*Id., ¶* 13).

## 2.    April 9, 2018, Classroom Incident

On April 9, 2018, Ms. Walker-Swinton administered a quiz in her morning English composition class (*Id., ¶* 14). Ms. Walker-Swinton told a student, John Doe, to put his cell phone away (*Id., ¶* 15). After John Doe finished his quiz Ms. Walker-Swinton alleged that he resumed using his cell phone, which prompted her to take his quiz and allow John Doe to exit the classroom (*Id.*, ¶ 16). After the time allotted to complete the quiz expired, Ms. Walker-Swinton stated that she addressed her class, which included Jane Doe, John Doe's girlfriend, and said "no instructor would let anyone use their d--n phone during a f---in quiz or test," and that "it was insane and retarded for anyone to think it was ok." (*Id., (Id., ¶* 17).[8] Ms. Walker-Swinton alleged that Jane Doe responded to this statement and asked if anyone who remained in the classroom used their phones, to which Ms. Walker-Swinton responded, "if it doesn't apply to you, then there is no need

---

[8] Ms. Walker-Swinton and PSC agree that actual profanity, including complete words, were used in these statements and exchanges as well as other statements and exchanges quoted by the Court in this Order. Alterations in these quotes throughout the Order are attributable to the Court.

to respond because I have the floor." (*Id.,* ¶ 18).  Jane Doe told Ms. Walker-Swinton that her comments were disrespectful (*Id.*, ¶ 19).

John Doe was waiting outside the classroom for Jane Doe to finish her quiz so that the pair could proceed to their next class (*Id.*, ¶ 20).  When Jane Doe exited the class, she told John Doe that Ms. Walker-Swinton called him a "f---ing retard," which prompted him to reenter the class and tell Ms. Walker-Swinton to "say it to [his] f---ing face" while referring to her as "all types of bi--hes." (*Id.*, ¶ 21).  Jane and John Doe both reported that Ms. Walker-Swinton referred to John as a "f---ing retard" (*Id.*, ¶ 22).  Video taken by a student in the classroom demonstrates that Ms. Walker-Swinton and John Doe were several feet apart and that another student had to restrain Ms. Walker-Swinton while Jane Doe moved John Doe into the hallway (*Id.*, ¶ 23).  No one was physically harmed during the events in Ms. Walker-Swinton's classroom (*Id.*, ¶ 24).

After the classroom incident subsided, Ms. Walker-Swinton called Ms. Des'Ree Ellison, Administrative Assistant in the Office of Academic Affairs, and asked her to call Campus Security (*Id.*, ¶ at 25).  At around 10:30 a.m. on April 9, 2018, while Jane and John Doe were in their next class, a security officer arrived on the second floor of the library and met Ms. Walker-Swinton and later John Doe (*Id.*, ¶ 27).

### 3.   April 9, 2018, Cafeteria Incident[9]

Ms. Ellison, who walked into the Titus Building with Jane and John Doe following behind her, interceded and placed Jane and John Doe in the waiting area of the Office of Academic Affairs suite, which was located adjacent to a glass partition (*Id.*, ¶ 34).  While they were waiting for their

---

[9]  Ms. Walker-Swinton denies allegations related to the April 9, 2018, cafeteria incident because she claims she "was not involved and was not present." (Dkt. No. 147, ¶¶ 36, 38-42).  She does not, however, cite to any record evidence to contradict the facts put forth by PSC.  As a result, the Court includes these facts in its Order.

advisor, Jane and John Doe reported that they witnessed Ms. Walker-Swinton, Ms. Walker-Swinton's children, and three other male students who were later identified as JW (Ms. Walker-Swinton's nephew), AP (Ms. Walker-Swinton's daughter's then boy-friend), and KC (AP's friend and former roommate) ascend the staircase and congregate outside of the Office of Academic Affairs on the second floor of the Titus Building (*Id*., ¶ 35). Jane and John Doe reported that, after Ms. Walker-Swinton pointed them out to her companions, the three male students walked up to the glass partition and stared at John Doe (*Id*., ¶ 36).

After they registered for classes, Jane and John Doe proceeded to the cafeteria for lunch (*Id*., ¶ 37). Shortly after they arrived at the cafeteria, the three male students who accompanied Ms. Walker-Swinton in the Titus Building (JW, AP, and KC) approached John Doe (*Id*., ¶ 38). JW, Ms. Walker-Swinton's nephew, confronted John Doe and said, "bi--h a-- n---a, what's this sh-t I heard you was saying about my aunt[?]," and then he, along with AP and KC, proceeded to punch and kick repeatedly John Doe, until various students and staff broke up the fight (*Id*., ¶ 39). Jane Doe attempted to intercede during the fight, and in that process, she sustained multiple injuries as well (*Id*., ¶ 40). The families of Jane and John Doe were concerned about these events and for their children's safety, and they threatened PSC with legal action (*Id*., ¶ 42). Ms. Walker-Swinton was not present during the cafeteria incident (Dkt. No. 116-1, at 19, 35, 48, 89).

Despite her familial relationship with JW, and despite the fact that AP was by that time living in Ms. Walker-Swinton's home because he was removed from campus due to the fighting episode (*Id., ¶* 51), Ms. Walker-Swinton never disclosed the identity of the individuals who accompanied her to the Titus Building (*Id*.). Ms. Walker-Swinton "did not make it home until after 8 [on the date of the incident[,]" but she could not recall whether or not she assisted AP—

who was then staying at her house and who was in her office area on the evening of April 9, 2018—

with his statement seeking an appeal of his suspension (*Id.*, ¶ 53).

From the video of the cafeteria fight, Dr. Doman was able to identify AP as one of the

assailants, and AP was immediately suspended from PSC (*Id.*, ¶ 52).  As the investigation

continued, PSC determined that JW and KC also perpetrated the attack against Jane and John Doe

(*Id.*, ¶ 54).

Ms. Walker-Swinton's son (CS), her nephew (JW), her daughter's boyfriend (AP), her

daughter's boyfriend's roommate (KC), and John Doe were all charged with violations of the

student handbook for their conduct on April 9, 2018 (*Id.*, ¶ 55).  Each student received disciplinary

action (*Id.*, ¶ 56).

### 4.       Events Following The Classroom Incident

On the date of the incident, Ms. Walker-Swinton filed a police report with the Little Rock

Police Department in which she alleged that John Doe "was being disrespectful towards her" and

that he threatened Ms. Walker Swinton, her son, and her daughter (Dkt. No. 116-21, 116-22, at 7).

On the date of the incident, Ms. Walker-Swinton also completed an "incident form" in which she

sought to have Jane and John Doe removed from her class (Dkt. No. 148-26).  PSC granted Ms.

Walker-Swinton's request to remove Jane and John Doe from her class without issue (Dkt. Nos.

116-17, ¶ 20; 116-18, at 38).  Ms. Walker-Swinton knew that she had authority to request the

removal of disruptive students from her class, as she did on July 10, 2017, with regard to a different

student (Dkt. No. 147, ¶ 48).  Ms. Walker-Swinton had no further contact with Jane or John Doe

after April 9, 2018 (*Id.*, ¶ 49).  John Doe was charged with violations of the student handbook for

his conduct on April 9, 2018 (*Id.*, ¶ 55).  He received disciplinary action (*Id.*, ¶ 56).

Pursuant to Officer Gains' directive, Ms. Walker-Swinton requested student statements (*Id.,* ¶ 58). Ms. Walker-Swinton asked TJ, a student in her class, in a group chat dialogue: "Can you do another statement that points out that I was talking to the class about paying attention and following directions and that no instructor would let anyone use their d--n phone during a quiz or test and that it was retarded for anyone to think it was ok. That's basically what I said. And point out that he wasn't the only one who acted up bc another student came in late to take the quiz then wrote all over it so I took it from her then she got made but didn't act out like he did. So after the quiz I addressed the whole class but his girlfriend got mad and started being disrespectful to me as she always is before leaving out. And if you have been there other times when they were rude to me will you point that out too? And point out the threat he kept making call me a bi--h and how he was going to slap my a-- and when he said he was about to beat my a--" (*Id.,* ¶ 59; Dkt. No. 116-8, at 21).

Ms. Walker-Swinton also addressed TA, another student in her class, by sending this message: "Can you do another statement that points out that I was talking to the class about paying attention and following directions and that no instructor would let anyone use their d--n phone during a f---in quiz or test and that it was insane and retarded for anyone to think it was ok. That's basically what I said. And point out that he wasn't the only one who didn't follow directions and got made so it was only right for the entire class to be addressed but his girlfriend got mad and started talking rudely to me before leaving out to find him. And if you have been there other times when they were rude to me will you point that out too?" (Dkt. No. 118, ¶ 60; Dkt. No. 116-8, at 37-38).

Ms. Walker-Swinton told EC, another student in her class, in a group chat dialogue: "write up another statement with more details and what you witnessed him doing when he rushed into the

class like he was about to attack me?" (Dkt. No. 118, ¶ 61; Dkt. No. 116-8, at 23).  Ms. Walker-Swinton asked her class:  "Class, did I anytime call [John Doe] a 'stupid m---erf---er' in class?"  (Dkt. No. 118, ¶ 62; Dkt. No. 116-8, at 19); it appears a student responded:  "They were ploting [sic] on you outside.  You said a couple a curse.  You said 'f---ing' and called his girlfriend disrespectful.  Even then you never referred to anyone specifically." (Dkt. No. 118, ¶ 62; Dkt. No. 116-8, at 31).

PSC maintains that John Doe has a learning disability or exceptionality (Dkt. No. 118, ¶ 66).  PSC did not provide Ms. Walker-Swinton any documentation that John Doe had any deficiency (Dkt. No. 147, at 16).  Dr. Smothers recruited Jane and John Doe to PSC and promised their families that he would keep them safe and not allow John Doe's perceived deficiencies to hinder his academic progress (Dkt. No. 118, ¶ 67).

The Faculty Grievance Committee is a standing committee of the Faculty Senate (*Id.*, ¶ 80).  Ms. Walker-Swinton served as Secretary of the Faculty Senate at the time of her termination (*Id.*, ¶ 81).  The Secretary of the Faculty Senate typically sends the College's administration lists of individuals on each of the Faculty Senate Committees (*Id.*, ¶ 82).  Ms. Walker-Swinton never complained about gender-based discrimination during the course of the investigation (*Id.*, ¶ 83).  Ms. Walker-Swinton testified that she believes the College was "trying to get over on [her]," but she stated that she did not know if she thinks that her gender played any role in her perceived treatment (*Id.*, ¶ 84).

Based upon record evidence before the Court, Ms. Walker-Swinton did not engage in any protected activity during her employment or otherwise during PSC's investigation (Dkt. No. 116-17, ¶¶ 42-44).

On June 27, 2018, PSC, by letter from Dr. Stevenson, informed Ms. Walker-Swinton that "specifically, [her] employment with the College is, effective immediately, hereby terminated for cause." (Dkt. Nos. 147, ¶ 70; 148-38).   Dr. Stevenson states that Ms. Walker-Swinton's behavior during the April 9, 2018, classroom incident "violated the College's General Harassment Policy Statement . . . ." (*Id.*).  Further, the letter states that Ms. Walker-Swinton:

> failed to disclose material information in the course of the College's investigation, attempted to conceal facts by deleting What's App and Group Me messages, then directed students as to what to include in their witness statements, and altered one witness's statement without that individual's knowledge or consent.

(*Id.*).

Ms. Walker-Swinton was terminated days after the prosecuting attorney's office mailed out the "Warning Letter" to student John Doe for terroristic threatening (Dkt. No. 147, ¶ 86).

Ms. Walker-Swinton filed her Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on August 21, 2018, in which she alleged that the College discriminated against her on the basis of sex and age between April 1, 2018 to August 2, 2018 (*Id.*, ¶ 104).

## 5.        Comparator Evidence

Dr. Smothers, President of PSC, testified that, "in an open orientation session in front of students and parents," he said that if he found students violating PSC's standards of student conduct, such as carrying a weapon on campus, he was going to "put [their] a-s-s-e-s on a bus and send [them] back home to [their parents.]" which elicited a "standing ovation" from the parents in attendance (Dkt. No. 147, ¶ 73).   According to Ms. Walker-Swinton, during an Honors Convocation on March 29, 2018, Dr. Smothers "angrily shouted publicly to the honor[s] students, "I will personally put your a--es on a bus'" in front of more than 25 parents and students (Dkt. No. 148-4, ¶ 72).  Ms. Walker-Swinton also maintains that during "different freshman opening events

while addressing incoming freshman students in 2015, 2016, and 2017, Dr. Smothers stated, 'I will personally put your a--es on a bus'" in front of more than 25 parents and students (*Id.*, ¶ 73).

Ms. Walker-Swinton has no knowledge of whether other professors at PSC ever used the phrase "it is retarded" in addressing their students (Dkt. No. 147, ¶ 90). Ms. Walker-Swinton alleged that Dr. Smothers and Chris Smith, Director of the S.T.A.R.T. Program and Special Assistant to the President, used intemperate language and did not receive disciplinary action (*Id.*, ¶ 91). Ms. Walker-Swinton alleges that Ms. Ellison says, "It's retarded," all of the time (Dkt. No. 116-1, at 37). Ms. Walker-Swinton alleges that Dr. Stevenson has even said, "It's retarded," all of the time and while in the Office Suite of Academic Affairs (Dkt. Nos. 116-1, at 37; 147, ¶ 101).

Dr. Smothers, as President of the College, reports to the College's Board of Trustees (Dkt. No. 147, ¶ 92). Dr. Stevenson, as Vice President for Academic Affairs, reported to Dr. Smothers (*Id.*, ¶ 96). Dr. Stevenson testified that Ms. Ellison, his Executive Assistant, handled a lot of the student interactions (Dkt. No. 116-18, at 16; 147, ¶ 98).

Dr. Smothers testified that Mr. Smith never used abusive language in his presence (Dkt. No. 147, ¶ 93). Ms. Ellison testified that she never heard Mr. Smith direct intemperate language towards Ms. Walker-Swinton; Ms. Walker-Swinton maintains this was because Ms. Ellison was not at the meeting when this occurred (*Id.*, ¶ 94). Dr. Doman, in his sworn declaration testimony, stated that he has never heard Mr. Smith use any inappropriate language against another employee (*Id.*, ¶ 95). Dr. Doman, in his sworn declaration testimony, stated that he has never heard of any professor referring to a student's conduct as "retarded" and that he has never heard Dr. Smothers or Dr. Stevenson use that language (*Id.*, ¶ 97). Dr. Stevenson testified that he would never find using the term "retarded" to be appropriate during classroom instruction or otherwise, although Ms. Walker-Swinton disputes his testimony as she claims he has used the word (*Id.*, ¶ 101).

No one on Dr. Smothers' Executive Committee has ever recommended terminating any faculty member, other than Ms. Walker-Swinton, for using offensive language towards a student (*Id.,* ¶ 77).

### 6. Panther Dolls

Ms. Walker-Swinton testified that PSC has always had a cheer and dance team program that was organized under the athletic department (*Id.*, ¶ 109). Ms. Walker-Swinton testified that she only gave the cheer and dance teams a name – Panther Dolls (*Id.*). "PSC Panther Dolls" is registered as a nonprofit corporation with the Arkansas Secretary of State, and Ms. Walker-Swinton is its registered agent (*Id.*, ¶ 112). Ms. Walker-Swinton opened a bank account with Simmons Bank on behalf of the Panther Dolls, and no PSC administrator was a signatory on the Panther Dolls' bank account (*Id.*, ¶¶ 113, 114). Students who participated in cheer and dance paid out of pocket expenses (*Id.*, ¶ 115). Students who participated in cheer and dance were required to engage in fundraising activities (*Id.*, ¶ 116). Ms. Walker-Swinton closed the Panther Dolls' account with Simmons Bank (*Id.*, ¶ 117).

Ms. Walker-Swinton was hired as the cheer and dance team coach for PSC (*Id.*, ¶ 125). The athletic directors each year submitted "requests for pays" (*Id.*). PSC attempted to accommodate Ms. Walker-Swinton's requests for funding and paid her stipends for her work with the Panther Dolls (*Id.,* ¶ 130). On June 30, 2017, Dr. Smothers approved a pay request from Athletic Director Cochran on behalf of Ms. Walker-Swinton, two months after the school year had ended, to pay Ms. Walker-Swinton $5,000.00 (*Id.*, ¶ 132). Ms. Walker-Swinton believes she was "damaged because [she] was asked to coach from the Athletic Director, okay, and he promised [her] pay . . . in 2012." (*Id.*, ¶ 138).

PSC participates in a regional athletic conference called the Gulf Coast Athletic Conference ("GCAC") and it is subject to the National Association of Intercollegiate Athletics' ("NAIA") rules and regulations (*Id.*, ¶ 105). "The Panther Dolls were never recognized by the NAIA as a collegiate sport during Ms. Walker-Swinton's employment (*Id.*, ¶ 108).

### 7.    Other Compensation

Ms. Walker-Swinton testified that Dr. Bruce James received pay as a Department Chair, but she did not (Dkt. No. 116-1, at 103). Ms. Walker-Swinton testified at her deposition that she was discriminated against on the basis of her gender because that is how she "felt . . . based off the way [she] was being treated." (Dkt. No. 147, ¶ 134). Ms. Walker-Swinton believes that she experienced gender-based discrimination because she did not receive stipend pay, the same as the males, for serving as Department Chair (Dkt. No. 148-4, ¶ 19).

On August 6, 2015, because she was frustrated that her compensation as a S.T.A.R.T. instructor was not included in the S.T.A.R.T. budget, she emailed Dr. Frank James to state that she would "NOT submit [her students'] grades for the program until [she] ha[d] received information about when [she] will be compensated, and until [she] verified with HR that all of the necessary paperwork have been received for [her] compensation to be processed." (Dkt. Nos. 116-47; 147, ¶ 139).

Mr. Wallace responded that he sent the recommendation for Ms. Walker-Swinton's S.T.A.R.T. compensation back to Dr. Ervin, Ms. Walker-Swinton's Division Chairperson, with a note stating that her position was not included in the budget and a proposed process through which to "quickly resolve[]" her concerns, which included a formal request to change the budget, approval by the responsible administrator to modify the budget if funds were available, and—upon all necessary administrators approving the "recommendation for hire"—requesting that Chris

Newton, then-Director of Human Resources, issue a manual paycheck to Ms. Walker-Swinton (Dkt. No. 147, ¶ 140).

Mr. Wallace also noted that PSC "often (campus wide) do[es] not fill out the hire form until after the class has begun or in some cases after the class has completed . . . [.]" and that "[w]e have to do a better job in controlling this process." (*Id*., ¶ 141).

### 8.   Damages

Ms. Walker-Swinton was hired as a temporary teacher in Fall 2018 with the Pulaski County Special School District making $36,663.42, which is less than the amount she was making at PSC (*Id*., ¶ 144; Dkt. No. 148-64).   Ms. Walker-Swinton is unaware of the damages she seeks against PSC or in what amount she seeks them stating, "[m]y damages are what's in the claim.  I don't know." (Dkt. Nos. 116-1, at 56; 147, ¶ 145).  Ms. Walker-Swinton does not know if she seeks any compensatory damages for emotional distress or for any medical injury (*Id*., ¶ 146).  Ms. Walker-Swinton testified that she does not know offhand how much money she believes PSC owes her (*Id*., ¶ 148).

### II.   Discussion

#### A.   Legal Standard

Summary judgment is appropriate if there is no genuine issue of material fact for trial. *UnitedHealth Group Incorporated v. Executive Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Fed. R. Civ. P. 56).  Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "In ruling on a motion for summary judgment '[t]he district court must base the determination regarding the presence or absence of a material issue of factual

dispute on evidence that will be admissible at trial.'" *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923-24 (8th Cir. 2004) (internal citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Johnson Reg'l Med. Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citation omitted).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008), *cert. denied*, 522 U.S. 1048 (1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

Importantly, "[t]here is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (citing *Fercello v. County of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010)). "Although employment discrimination cases are 'often fact intensive and dependent on nuance in the workplace, they are not immune from summary judgment.'" *Trierweiler v. Wells Fargo Bank*,

639 F.3d 456, 459 (8th Cir. 2011) (quoting *Fercello*, 612 F.3d at 1077).  "An employer is entitled

to judgment as a matter of law if the record conclusively reveal[s] some other, nondiscriminatory

reason for the employer's decision."  *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1047

(8th Cir. 2002) (internal quotations and citations omitted).

### B.   Claims Of Gender Discrimination Based On Termination Under Title VII And The ACRA

#### 1.   Legal Standard

To the extent Ms. Walker-Swinton alleges claims for discrimination arising under Title VII

and the ACRA based on her termination, the same standard applies to both the discrimination

claim brought under the federal statute and to claims brought under the ACRA.  *See McCullough*

*v. Univ. of Ark. for Med. Sciences*, 559 F.3d 8555, 860 (8th Cir. 2009) (applying the same standards

to Title VII and ACRA claims).  She purports to state gender discrimination claims under Title

VII and the ACRA.  Ms. Walker-Swinton can establish a *prima facie* claim of discrimination either

by providing direct evidence of discrimination or by creating an inference of unlawful

discrimination under the three-step analysis set out in *McDonnell Douglas Corporation v. Green*,

411 U.S. 792, 802-05 (1973).  *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 953 (8th Cir. 2012).

Direct evidence is evidence "showing a specific link between the alleged discriminatory

animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that

an illegitimate criterion actually motivated" the adverse employment action.  *Torgerson v. City of*

*Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (quoting *Griffith v. City of Des Moines*, 387 F.3d

733, 736 (8th Cir. 2004)).  "Thus, 'direct' refers to the causal strength of the proof, not whether it

is 'circumstantial' evidence.  A plaintiff with strong direct evidence that illegal discrimination

motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis

to get to the jury, regardless of whether his strong evidence is circumstantial."  *Id.*  However, "if

the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Id.*

Under the *McDonnell Douglas* analysis, the elements of a *prima facie* discrimination claim are:  (1) the employee belonged to a protected class; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) she was treated differently from similarly situated employees who do not belong to the protected class.  *Hesse v. Avis Rent A Car System, Inc.,* 394 F.3d 624, 631 (8th Cir. 2005).  The fourth element of a *prima facie* discrimination case also can be met if the employee provides "some other evidence that would give rise to an inference of unlawful discrimination."  *Putman v. Unity Health Sys.,* 348 F.3d 732, 736 (8th Cir. 2003). Once an employee establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions, and then shifts back to the employee to show that the employer's reason was pretextual.  *Hesse,* 394 F.3d at 631.

### 2.      Analysis

#### a.      *Prima Facie* **Case**

PSC contends that Ms. Walker-Swinton is unable to establish a *prima facie* case of gender discrimination based on her termination.  It is undisputed that Ms. Walker-Swinton can satisfy the first and third prongs of her *prima facia* case.  PSC disputes, however, that Ms. Walker-Swinton can establish that she was meeting its legitimate job expectations when she used a disability slur in the classroom in violation of its policies.

PSC contends that the record evidence establishes that Ms. Walker-Swinton's use of a disability slur in the classroom violated the following policies:  (1) PSC's "commitment to accessibility" which prohibits "discrimination, retaliation, coercion, interference, intimidation, or

any other adverse action against individuals on the basis of disability" (Dkt. No. 116-29); (2) the

faculty handbook which prohibits "discrimination, retaliation, coercion, interference, intimidation,

or any other adverse action against individuals on the basis of disability" and explains that speech

"constitutes harassment" if it is "intended to insult or stigmatize an individual or an identifiable

group of individuals on the basis of . . . disability . . . ; [or] [a]ddressed directly to (though not

necessarily in the presence of) the individual(s) whom it insults or stigmatizes[.]" (Dkt. No. 116-

3); and (3) the college catalog, which is also incorporated by reference into Ms. Walker-Swinton's

employment agreement and provides in part that, "[i]n compliance with the Higher Education Act

of 1965 and other civil rights laws, the College offers equal opportunities for admission and

employment[,]" that all of its programs and activities are provided without regard to—among other

prohibited basis of discrimination—disability, and explains that discrimination on the basis of

disability is prohibited including harassing conduct that "is intended to insult or stigmatize an

individual, or an identifiable group of college-related individuals on the basis of . . . disability[.]"

(Dkt. No. 114-5, at 3, 17).  Each of Ms. Walker-Swinton's employment agreements, incorporates

by reference the faculty handbook (Dkt. No. 116-2).

Ms. Walker-Swinton does not deny using the word "retarded" during her composition class

(Dkt. No. 116-1, at 30, 37).  Ms. Walker-Swinton asserts, however, that she "never called or

referred to any *student* as 'retarded' or a 'retard' during classroom instruction or otherwise" (Dkt.

No. 148, at 15 (emphasis added)).  Ms. Walker-Swinton also states that John Doe was not in the

classroom when she used the term, that student witnesses attest that she did not call a student

"retarded" or a "retard," and that John Doe never filed a complaint against her (Dkt. Nos.  116-1,

at 38; 148-2; 148-4; 148-24; 148-48).  PSC contends this behavior did not meet its reasonable

expectations of her employment.

PSC also asserts that Ms. Walker-Swinton's behavior during the investigation of the incident demonstrates that she was not fit to continue her employment (Dkt. No. 117, at 29). Particularly, PSC points to Ms. Walker-Swinton not being forthcoming during the investigation of the incident about having directed students as to what to include in their witness statements (Dkt. Nos. 116-27; 147, ¶¶ 5-60).

Ms. Walker-Swinton states that she was meeting PSC's expectations during her seven years of employment.  She states that she demonstrated a commitment to PSC and its students, showed up for work daily, developed part of PSC's 10-year long range strategic plan, taught, published, participated in professional activities, spoke at conferences, advised students, maintained office hours, observed grading deadlines, produced administrative work and participated in committee assignments, and attended weekly chapel programs (Dkt. No. 148, at 25).

Ms. Walker-Swinton states that she did not use a disability slur and that "her use of words within the context expressed from the urban dictionary was neither offensive or harassment and that she used the term 'retard' in the same context as President Smothers" (*Id.*, at 26).  Ms. Swinton explained that "the term describes a city and in [sic] unrelated to a race of people."[10] (*Id.*).  Ms. Walker-Swinton cites to her deposition testimony and affidavit as support for this proposition, but neither her deposition testimony nor her affidavit provides any support for the meaning she offers (Dkt. Nos. 116-1, at 114; 148-4; 156, at 17).  She further claims that her composition class was not a remedial or developmental course and that PSC's Integrated Campus Center Disabilities Services ("ICCDS") Office never informed her that John Doe had a disability (*Id.,* at 27).

---

[10]   At her deposition, Ms. Walker-Swinton testified that "it's retarded" means "bulls—t," according to the *Urban Dictionary* (Dkt. No. 116-1, at 34).

The "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Torlowei v. Target*, 401 F.3d 933, 935 (8th Cir. 2005) (quoting *Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998)).  "The fact that an employee meets some expectations, however, does not mean that she meets the standard if she does not meet other significant expectations." *Calder v. TCI Cablevision of Missouri, Inc.*, 298 F.3d 723, 729 (8th Cir. 2002).  The undisputed record evidence demonstrates that Ms. Walker-Swinton used the term "retarded" in the classroom, and PSC had harassment policies in place to prevent actions, including speech, that "intended to insult or stigmatize an individual or an identifiable group of individuals on the basis of . . . disability . . . ; [or] [a]ddressed directly to (though not necessarily in the presence of) the individual(s) whom it insults or stigmatizes[.]" (Dkt. No. 116-3).

According to Ms. Walker-Swinton's statement regarding the incident, she addressed the "whole class" after John Doe left her composition class on April 9, 2018, and said, in part, "[i]t is retarded or insane for anyone to think that it is okay to use a cell phone while taking a test, a quiz or a test." (Dkt. No. 116-1, at 30).  According to a student witness statement attached to Ms. Walker-Swinton's amended brief, Ms. Walker-Swinton stated in class, "[t]hey are f---ing retards." (Dkt. No. 148-24).  Whether Ms. Walker-Swinton intended to insult John Doe is irrelevant under PSC's harassment policies because her use of the term "retarded" or "retards" in a learning environment carried the potential to insult or stigmatize students with intellectual disabilities. Based on the record evidence, construing all reasonable inferences in favor of Ms. Walker-Swinton, the Court determines that no reasonable juror could conclude that Ms. Walker-Swinton was meeting her employer's legitimate job expectations as a result, and thus, she fails to satisfy

the second element of her *prima facie* case.[11]   *E.M.J. by & through M.J. v. Garrard Cty. Bd. of Educ.*, 413 F. Supp. 3d 598, 609 (E.D. Ky. 2019), *appeal dismissed,* No. 19-6101, 2019 WL 8327893 (6th Cir. Dec. 18, 2019) (holding the alleged perpetrators' use of the slur "retard" likely creates a genuine dispute as to disability animus); *Equal Emp. Opportunity Comm'n v. Evergreen All. Golf Ltd., LP*, No. CV 11-0662-PHX-JAT, 2013 WL 1249127, at *13 (D. Ariz. Mar. 26, 2013) ("the Court finds it was objectively reasonable under these circumstances for Rasnake to believe, even if his belief was wrong, that under the ADA his supervisor could not derogatorily use the word "retarded" in a professional environment.").

PSC argues that Ms. Walker-Swinton is also unable to demonstrate a genuine issue of material fact in dispute regarding whether her termination occurred under circumstances that would permit an inference of gender-based discrimination (Dkt. No. 117, at 29).   "While the burden of establishing a *prima facie* case of disparate treatment is not onerous, the plaintiff must be able to produce some evidence of similarity between her and her comparator."   *Rebouche v. Deere & Co.*, 786 F.3d 1083, 1087-88 (8th Cir. 2015) (internal quotation and citation omitted). Because the required showing for a *prima facie* case is a "flexible evidentiary standard," a plaintiff can establish an inference of discrimination to satisfy this element in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, by showing biased comments by a decisionmaker, or by showing pretext with evidence that an employer failed to follow its own policies or shifted its explanation of the employment decision. *Grant v. City of Blytheville, Ark.*, 841 F.3d 767, 774 (8th Cir. 2016).

---

[11]   Ms. Walker-Swinton cites PSC's faculty handbook to assert that PSC violated its own policy requiring that it give notice of non-reappointment at least 12 months before the expiration of an appointment (Dkt. No. 148, at 26 (citing Dkt. No. 148-37, at 48)).   That portion of the faculty handbook does not, however apply to employees like Ms. Walker-Swinton who are terminated for cause (Dkt. No. 116-3, at 49-50).

PSC argues that Ms. Walker-Swinton has not presented any evidence of gender discrimination because she has not identified comparators who engaged in similar conduct but received less severe disciplinary action.  Without pointing to any evidence in the record, Ms. Walker-Swinton asserts that she "can show more favorable treatment of similarly situated employees who are not in the protected class or biased comments by a decisionmaker" and claims that she has met the fourth element of her *prima facie* case (Dkt. No. 148, at 28).

Reviewing the record evidence in the light most favorable to Ms. Walker-Swinton, she has identified Dr. Smothers, Mr. Smith, Mr. Lewis, and Dr. Stevenson as potential comparators.  Ms. Walker-Swinton asserts that Dr. Smothers used the word "a--" when telling students and their parents that he would "put [the students'] a-s-s-e-s on a bus and send [them] back home to [their] momma[s] and dadd[ies][.]"  According to Ms. Walker-Swinton's affidavit, Dr. Smothers made this or a similar comment at freshman opening events in 2015, 2016, and 2017 and during an honors convocation on March 29, 2018 (Dkt. No. 148-4, ¶¶ 72, 74).

At her deposition, Ms. Walker-Swinton claimed that the word "a--" in this context was "sexual harassment" because "it's derogatory for a male to say [that] to a woman" (Dkt. No. 116-1, at 93).  The record evidence does not demonstrate that Dr. Smothers made such statements to "a woman"; Ms. Walker-Swinton maintains that he made such statements to large groups of male and female students and parents to emphasize the importance of following PSC's rules.  Further the word "a--" is not an insult pointed obviously toward any particular class of person.  The word "retard," on the other hand, reflects negatively toward people with disabilities.  *Vieira v. Honeoye Cent. Sch. Dist.*, No. 09-CV-6163-CJS-JWF, 2013 WL 1915770, at *6 (W.D.N.Y. May 8, 2013) (referring to retard as a disability-related slur) (citing  *K.M. ex rel. D.G. v. Hyde Park Cent. Sch.*

*Dist.*, 381 F. Supp. 2d 343, 348 (S.D.N.Y. 2005) (referring to "stupid," "idiot," "retard" as "disability-related insults")).

The Court also finds that Ms. Walker-Swinton and Dr. Smothers are not similarly situated for purposes of this analysis. As President of PSC, Dr. Smothers reports to PSC's Board of Trustees. Ms. Walker-Swinton, a non-tenured faculty member, reported to Dr. Sheer, the Chair of the General Education Department, who reported to Dr. Stevenson (Dkt. No. 116-18, at 23). The Court cannot find, based on the record before it, that Dr. Smothers is a proper comparator outside of the protected class who engaged in similar conduct but received less severe disciplinary action.

In her complaint, Ms. Walker-Swinton asserts that Mr. Smith, who worked as Director for the S.T.A.R.T. Program and as a Special Assistant to the President, "cursed her" in the presence of Dr. Smothers (Dkt. Nos. 1, ¶¶ 34, 68; 116-1, at 103). Ms. Walker-Swinton asserts that, "if Dr. Smothers wanted to fire me, because he said I so-called curse[d], then he should have fired Chris Smith too." (Dkt. No. 116-1, at 103). Ms. Walker-Swinton provides the affidavit of Dr. Hazel Ervin, Vice President for Academic Affairs at PSC from Fall 2013 to Fall 2016, who states that she was "in attendance at a meeting where Chris Smith cursed Ms. Swinton openly without punity or apology." (Dkt. No. 148-5, ¶¶ 2, 20). In her affidavit, Ms. Walker-Swinton asserts that, at the meeting which occurred in 2015, Mr. Smith stated, "[t]utors are not here to cover you're a--es!" (Dkt. No. 148-4, ¶ 71). Based on this record evidence, the Court does not find Mr. Smith's statement to be similar to Ms. Walker-Swinton's statement that is the subject of this litigation. Mr. Smith was speaking to PSC staff, not students, and the word "a--es" does not appear to be an insult pointed obviously toward any particular individual. Finally, unlike Ms. Walker-Swinton, Mr. Smith reported to Dr. Smothers. The Court cannot find, based on the record before it, that Mr.

Smith is a comparator outside of the protected class who engaged in similar conduct but received less severe disciplinary action.

Ms. Walker-Swinton states that in Fall 2016, Mr. Lewis "cursed Ms. Swinton in an open staff meeting" and that Dr. Smothers and Darnell Williams were present in the meeting (Dkt. No. 148, at 33, 36, 38). She claims that everyone in attendance at the meeting, which was scheduled "to address the non[]-issuance of a Panther Dolls['] budget." were males except for her (*Id.*, at 33). Mr. Lewis was Chief of Staff and reported to Dr. Smothers. The Court does not find that Mr. Lewis's statement is similar to Ms. Walker-Swinton's statement that is the subject of this litigation. Mr. Lewis was speaking with PSC staff, not students. Further, Mr. Lewis was Chief of Staff and reported to Dr. Smothers. The Court cannot find, based on the record before it, that Mr. Smith is a proper comparator outside of the protected class who engaged in similar conduct but received less severe disciplinary action.

Ms. Walker-Swinton stated that Dr. Stevenson said "[i]t's retarded all of the time." (Dkt. No. 116-1, at 37). There is no evidence in the record, however, that Dr. Stevenson used the word retarded in front of students or to describe student behavior. Further, Dr. Stevenson was the Vice President of Academic Affairs and reported to Dr. Smothers (Dkt. No. 116-18, at 5, 15-16). The Court cannot find, based on the record before it, that Dr. Stevenson is a proper comparator outside of the protected class who engaged in similar conduct but received less severe disciplinary action.

Based on the record evidence, construing all reasonable inferences in favor of Ms. Walker-Swinton, the Court determines that no reasonable juror could find in Ms. Walker-Swinton's favor on the fourth element of her gender discrimination claim based on her termination.

### b.      Legitimate Nondiscriminatory Reason

PSC contends that, even if Ms. Walker-Swinton could establish a *prima facie* case of race

or gender discrimination, PSC had a legitimate, non-discriminatory reason for terminating her.

The employer's burden to articulate a nondiscriminatory reason is "not onerous." *Flloyd v. State*

*of Mo. Dep't of Soc. Servs., Div. of Family Servs.*, 188 F.3d 932, 936 (8th Cir. 1999).   PSC

articulates a non-discriminatory reason for Ms. Walker-Swinton's termination by maintaining that

it terminated her for using a disability-related slur during her classroom instruction in violation of

PSC's harassment policies and also for not being forthcoming during PSC's investigation of the

incident with John Doe.  The Court agrees.  PSC has articulated a legitimate, non-discriminatory

reason for terminating Ms. Walker-Swinton (Dkt. No. 116-27).

### c.      Pretext

#### i.      Legal Standard

Once the employer articulates a legitimate, non-discriminatory reason for the challenged

conduct, the plaintiff must produce sufficient evidence to create a genuine issue of material fact

regarding whether the proffered reason is mere pretext for intentional discrimination.  *Pope v. ESA*

*Servs., Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005).  The plaintiff has the burden of showing, by a

preponderance of the evidence, that the employer's proffered reason for the challenged action is

not true and that discrimination was the real reason.  *Reeves v. Sanderson Plumbing Prods.*, 530

U.S. 133, 143 (2000).

"At the pretext stage, 'the test for determining whether employees are similarly situated to

a plaintiff is a rigorous one.'"  *Bone,* 686 F.3d at 956 (quoting *Rodgers v. U.S. Bank, N.A.,* 417

F.3d 845, 853 (8th Cir. 2005)).  To succeed at the pretext stage, Ms. Walker-Swinton must show

that she and the potential comparators she identifies were "similarly situated in all relevant

respects." *Id.* (quoting *Rodgers,* 417 F.3d at 853). That is, the employees "used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Wierman v. Casey's Gen. Stores,* 638 F.3d 984, 994 (8th Cir. 2011) (quoting *Cherry v. Ritenour Sch. Dist.,* 361 F.3d 474, 479 (8th Cir. 2004)).

### *ii.*      Analysis

Viewing the record evidence in the light most favorable to Ms. Walker-Swinton, no reasonable fact finder could conclude that Ms. Walker-Swinton identifies proper comparators to demonstrate pretext. Based on the record evidence, even construing all inferences in favor of Ms. Walker-Swinton, it is not clear whether Dr. Smothers, Mr. Smith, Ms. Ellison, and Dr. Stevenson engaged in the same use of language in which Ms. Walker-Swinton is alleged to have engaged. Regardless, even if that were the case, Ms. Walker-Swinton has failed to identify any purported comparator not in the protected class who committed a violation of PSC's harassment policies that Ms. Walker-Swinton is alleged to have committed, who failed to disclose material information to PSC staff who investigated the incident with Jane and John Doe, who was supervised by the same individuals, and who was not terminated. Viewing the record evidence in the light most favorable to Ms. Walker-Swinton, no reasonable fact finder could find in favor of Ms. Walker-Swinton on the issue of pretext.

If the proffered reason for an employee's termination is shown by conflicting evidence to be untrue, then the nonmoving party is entitled to all favorable inferences that the false reason given masks the real reason of intentional discrimination. *Loeb v. Best Buy Co.,* 537 F.3d 867, 873 (8th Cir. 2008). Here, Ms. Walker-Swinton concedes that she used the word "retarded" in her

composition class.  Additionally, she admits to sending messages to students asking them to rewrite their statements about the incident.

Ms. Walker-Swinton states that Jane and John Doe called her a "bi--h" and threatened her (Dkt. No. 148-4, ¶ 30).  She also states that she did not "knowingly withhold or delete information relevant to any investigation that I was aware of" and "did not assist, encourage, or edit the statements of students relating to the classroom incident or the cafeteria altercation; however, I told the students to clearly report what they had witnessed." (*Id*., ¶¶ 59-60).

Generally, an employee's justifications for failing to meet the employer's expectations are not evidence that creates a genuine issue of fact as to whether the employer's reasons were mere pretext.  *Haigh v. Gelita USA, Inc*., 632 F.3d 464, 470 (8th Cir. 2011); *Riley v. Lance, Inc.,* 518 F.3d 996, 1002 (8th Cir. 2008) ("[The plaintiff's] attempt to justify his failure [to meet the employer's requirements] does not create a genuine issue as to the legitimacy of the requirement.").  Accordingly, any alleged factual dispute regarding the details of some of the alleged conduct and whether other actions where justifiable does not preclude summary judgment.

Moreover, "[t]he critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge." *McCullough v. Univ. of Ark. For Med. Sciences,* 559 F.3d 855, 861-62 (8th Cir. 2009).  Viewing the record evidence in the light most favorable to Ms. Walker-Swinton, no reasonable fact finder could conclude that PSC did not in good faith believe that Ms. Walker-Swinton engaged in the conduct for which she was terminated; Ms. Walker-Swinton admits that she engaged in the conduct.  Further, the Court notes, "[t]he appropriate scope of investigation is a business judgment,

and shortcomings in an investigation do not by themselves support an inference of discrimination." *Id.* at 863.

"[T]he showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee. A plaintiff must also demonstrate that the circumstances permit a reasonable inference of discriminatory animus." *Roeben v. BG Excelsior Ltd. Partnership,* 545 F.3d 639, 643 (8th Cir. 2008) (internal quotation marks and citation omitted).

As evidence of discriminatory animus Ms. Walker-Swinton points to several incidents. The Court will discuss each in turn.

Ms. Walker-Swinton first points to a meeting she characterizes as an "administrative hearing" that was used as a "ruse to investigate" her and not her formal complaint that she filed against John Doe (Dkt. No. 148, at 29). PSC's attorney, Dr. Stevenson, and Dr. Doman attended the meeting, and she labels the three men in attendance the "BOYS CLUB male panel" (*Id.*, at 29-30). She claims that, at the meeting, PSC's attorney took her cell phone without her permission and took pictures of messages on her phone with his cell phone (*Id.*, at 29). She claims her direct supervisor, Dr. Sheer, was not given notice of what she labels an "administrative hearing" (*Id.*).

Ms. Walker-Swinton asserts that PSC never investigated her "complaint that she was violated and threatened in her classroom" by John Doe and, by failing to investigate, "violated their own policy of grievance procedures." (*Id.*, at 30 (citing Dkt. No. 148-37, at 37)). Ms. Walker-Swinton asserts that, on April 9, 2020, she "spoke with Carla Carter, VP Faculty Senate, who helped Ms. Swinton write the formal complaint via text on how to file the formal complaint for harassment." (*Id.* (citing Dkt. No. 148-72)). The text messages that Ms. Walker-Swinton points to in support of her assertion that she filed a "formal complaint" with PSC are a text messages with

Ms. Carter dated July 16, 2018, and July 20, 2018, after Ms. Walker-Swinton's June 27, 2018, termination (Dkt. No. 148-72). While in the first text Ms. Carter states that she is checking to see who is in charge of appeals and grievances for faculty, in the later text Ms. Walker-Swinton appears to be asking Ms. Carter to file a grievance with the Arkansas Supreme Court against PSC's attorney (*Id.*). Ms. Walker-Swinton states that Ms. Carter later said that she "decided she did not want to be involved in the grievance because her mother, Etta Carter 'is on the Board and she's very close with President Smothers.'" (*Id.*). Ms. Walker-Swinton does not cite the Court to any evidence in the record to support her claim that Ms. Carter would not be involved in her grievance process. In fact, the record evidence indicates that Ms. Carter responded, "I'm checking to see who is in charge of appeals and grievances for faculty. I will get back with you asap" (*Id.*). Ms. Walker-Swinton asserts that her communications with Ms. Carter renders "PSC's reason for termination for cause" a "genuine material issue for jury determination." (Dkt. No. 148, at 31).

Citing to the deposition of a former male employee, C.J. Duvall, Ms. Walker-Swinton states that "[i]t is customary that females are treated differently at PSC," and PSC "has demonstrated turning a blind eye to male violation of PSC's policies without reprimand." (Dkt. No. 148-60, at 21, 24).

Ms. Walker-Swinton argues that "three (3) male employees—Smothers, Chris Smith and David Lewis—violated the Employee Handbook Policy on Harassment without retribution." (Dkt. No. 148, at 32). Ms. Walker-Swinton states that Mr. Smith and Mr. Lewis are "all similarly situated since President Smothers makes the call who gets hired and who gets terminated." (*Id.*, at 37).

With a lack of citation to the record, Ms. Walker-Swinton states that Dr. Smothers violated the PSC harassment policy when he "cursed at students at commencement and at freshman

orientation." Dr. Smothers admitted using the word "a--es" at freshman orientation before students and parents. Even if the Court accepts as true Ms. Walker-Swinton's assertions that Dr. Smithers's language was a violation of PSC's harassment policy, as the President of PSC who reports to PSC's Board of Trustees, Dr. Smothers is not similarly situated to Ms. Walker-Swinton, an un-tenured faculty member.

Ms. Walker-Swinton states that, in 2015, Mr. Smith, who she characterizes as "a male Assistant and personal friend to President Smothers, cursed and threatened Swinton in a meeting." (Dkt. Nos. 148 at 37-38; 148-4, ¶ 71). Even if the Court accepts as true Ms. Walker-Swinton's assertion that Mr. Smith's language violated PSC's harassment policy, as Director for the S.T.A.R.T. Program and Special Assistant to the President reporting to Dr. Smothers, Mr. Smith is not similarly situated to Ms. Walker-Swinton, an un-tenured faculty member.

Ms. Walker-Swinton states that, in the Fall 2016, Mr. Lewis "cursed Ms. Swinton in an open staff meeting" and that Dr. Smothers and Darnell Williams were present in the meeting (Dkt. No. 148, at 33, 36, 38). She claims that everyone in attendance at the meeting, which was scheduled "to address the non[]-issuance of a Panther Dolls['] budget." were males except for her (*Id*., at 33). Mr. Lewis was Chief of Staff and reported to Dr. Smothers. The Court finds that, even if Mr. Lewis's language at the meeting violated PSC's harassment policy, Mr. Lewis is not similarly situated to Ms. Walker-Swinton.

Viewing the record evidence in favor of Ms. Walker-Swinton, nothing in the record permits a reasonable inference of discriminatory animus, and no reasonable fact finder could find in favor of Ms. Walker-Swinton on pretext.

As a result, because Ms. Walker-Swinton fails to demonstrate a *prima facie* case of gender discrimination; because PSC has articulated a legitimate, non-discriminatory reason for her

termination; and because Ms. Walker-Swinton fails to establish pretext and a reasonable inference of discriminatory animus, the Court grants summary judgment in favor of PSC on Ms. Walker-Swinton' gender discrimination claims based on her termination.

### C.   Claim Of Gender Discrimination Based On Alleged Hostile Work Environment Under Title VII And The ACRA

Ms. Walker-Swinton's complaint includes a claim of "hostile work environment harassment," but it was based on "the dangerous classroom incident she encountered" with John Doe, not on her gender or any other protected characteristic (Dkt. No. 1, ¶¶ 103-115). Ms. Walker Swinton alleges that she reported her "concerns to the Pulaski County Attorney's office" that "Defendants failed to provide a safe work environment" (*Id*., ¶¶ 109, 110).

At her deposition, Ms. Walker-Swinton alleged that she suffered from gender-based "sexual harassment" when Dr. Smothers told students during freshman orientation that he would place their "a--es" back on a bus if they violated PSC policies (Dkt. No. 116-1, at 93). She also alleged that John Doe threatened her, called her a "bi--h," and told her that "he was going to whip my a-- and slap the f--k out of me." (*Id*., at 38).

In her response to the motion for summary judgment, Ms. Walker-Swinton also argues that in the Fall 2016, Mr. Lewis "cursed Ms. Swinton in an open staff meeting" and that Dr. Smothers and Darnell Williams were present in the meeting (Dkt. No. 148, at 33, 36, 38). She also asserts as evidence of a hostile work environment that Mr. Smith cursed her during a staff meeting in the Summer 2015; that PSC's attorney "snatched" her phone out of her hand during the investigation of the April 9, 2018, incident; that John Doe harassed her after the April 9, 2018, classroom incident by walking past her classroom window and office door making "glaring and intimidating stares"; and that Dr. Stevenson harassed her by directing Brian Clay, Head of Technology at PSC,

to lock her out of her computer some time following the April 9, 2018, incident (Dkt. Nos. 1, ¶ 33; 148, at 45-46).

As an initial matter, the Court finds that, under its ruling on defendant's motion to dismiss, Ms. Walker-Swinton's Title VII claims arising from incidents that occurred prior to April 1, 2018, are time barred (Dkt. No. 41, at 16-18, 26). Ms. Walker-Swinton's claim that Dr. Smothers' use of the word a--es during a March 29, 2018, convocation; that Mr. Lewis cursed her at a staff meeting in the Fall 2016, and that Mr. Smith cursed her at a meeting in the Summer 2015 cannot be grounds for Ms. Walker-Swinton's hostile work environment claims under Title VII.[12]

### 1.        Legal Standard

To establish a *prima facie* case of hostile work environment harassment, Ms. Walker-Swinton must show:  (1) that she is a member of a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on her membership in the protected group; and (4) that the harassment affected a term, condition, or privilege of her employment. *Clay v. Credit Bureau Enterprises, Inc.*, 754 F.3d 535, 540 (8th Cir. 2014). She must also demonstrate that a supervisor caused the harassment. *See Gordon v. Shafer Contracting Co.*, *Inc.*, 469 F.3d 1191, 1194-95 (8th Cir. 2006). In the alternative, if her hostile work environment claim is based on harassment by a someone other than her supervisor, such as a co-worker or customer, she must also prove that the employer "knew or should have known of the harassment and failed to take proper remedial action." *Hales v. Casey's Mktg. Co.*, 886 F.3d 730, 735 (8th Cir. 2018).

---

[12] A claim under the ACRA must be filed within one year after the alleged employment discrimination occurs. *See* Ark. Code Ann. § 16-123-107(c)(3). Ms. Walker-Swinton filed her complaint in this Court on November 28, 2018. Therefore, any alleged employment discrimination occurring before November 28, 2017, cannot be the basis for an ACRA claim.

2.      **Analysis**

Even if Ms. Walker-Swinton could meet the first three elements of the *prima facie* case, to establish the fourth element, Ms. Walker-Swinton must demonstrate that the harassment was "severe or pervasive enough to create an objectively hostile or abusive work environment" and that she subjectively believed that her working conditions had been altered. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

Harassment "standards are demanding—to be actionable, conduct must be extreme and not merely rude or unpleasant." *Alagna v. Smithville R–II Sch. Dist.,* 324 F.3d 975, 980 (8th Cir. 2003)).  More than a few isolated incidents are required, and the alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment. *Scusa v. Nestle U.S.A. Co.,* 181 F.3d 958, 967 (8th Cir. 1999).  Ms. Walker-Swinton must prove that the workplace was "permeated with discriminatory intimidation, ridicule, and insult." *Harris,* 510 U.S. at 21.  Courts consider the "totality of the circumstances" to determine whether a work environment is hostile or abusive. *Baker v. John Morrell & Co.,* 382 F.3d 816, 828 (8th Cir. 2004).  For example, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23.

The Court has examined all of the record evidence.  Construing the record evidence in the light most favorable to Ms. Walker-Swinton, she alleges the following to support her claim of a hostile work environment:  (1) that John Doe was present in the library outside of her class and would "stare" at her "in a threatening manner the same as he did on April 9, 2018." (Dkt. No. 148-4, ¶ 65); (2) that she reported this to Dr. Stevenson who told her to "let him know if JM approaches" her but that she "felt that would be too late" and "had to complete the remaining semester in fear";

and (3) that PSC harassed her by "entering my email, locking me out of my email account, searching my desktop computer and cell phone without my permission, and threatening termination." (*Id.*, ¶¶ 65-66).

The Court concludes that, considering the record evidence in the light most favorable to Ms. Walker-Swinton, she fails to meet the high bar of establishing a hostile work environment sufficient to defeat PSC's motion for summary judgment on this claim.  Compared to other cases in which the Eighth Circuit Court of Appeals has found the alleged harassing conduct did not constitute gender discrimination, this Court determines that the harassment Ms. Walker-Swinton alleges in this case does not create an actionable hostile work environment claim.  *See Alagna v. Smithville R-II School Dist.*, 324 F.3d 975, 980 (8th Cir. 2003) (holding that a male teacher's touching a female teacher, telling her that he loved her, and acting inappropriately for two years was not sufficiently severe to satisfy a claim for hostile work environment sexual harassment); *Mongelli v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 491 F. Supp. 2d 467, 477, 480 (D. Del. 2007) (finding that the conduct of a special education student was not sufficiently "severe or pervasive" where the student "humped" the teacher, grabbed her and pulled her close to his body, pretended to have sex in her presence, made crude, sexual comments, cursed her, and otherwise acted inappropriately).

Further, the Court finds that Ms. Walker-Swinton has not established that PSC knew of the harassment and failed to take proper remedial action.  Ms. Walker-Swinton testified to complaining about John Doe's alleged harassment to various supervisors including Dr. Carter and Dr. Stevenson.  After hearing Ms. Walker-Swinton's complaints that she felt threatened by Jane and John Doe, Jane and John Doe were removed immediately from Ms. Walker-Swinton's composition class (Dkt. Nos. 116-1, at 30; 116-17, ¶ 20).  "If an employer responds to harassment

with prompt remedial action calculated to end it, then the employer is not liable for the harassment." *Alvarez v. Des Moines Bolt Supply, Inc.,* 626 F.3d 410, 421 (8th Cir.2010).  "Factors in assessing the reasonableness of remedial measures may include the amount of time that elapsed between the notice and remedial action, the options available to the employer, . . . and whether or not the measures ended the harassment."  *Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir. 1999) (citations omitted).

Ms. Walker-Swinton testified that, following John Doe's removal from her class, he walked past her classroom window and office door making "glaring and intimidating stares."  She states that she reported this to Dr. Stevenson who "told me to only let him know if JM approaches me." (Dkt. No. 148-4, ¶ 64).  Even though she did not feel this response was adequate, she admits that she had no further incidents with Jane and John Doe after April 9, 2018.

Viewing the record evidence in favor of Ms. Walker-Swinton, nothing in the record permits a reasonable inference of severe and pervasive harassment, and the Court determines that no reasonable fact finder could find in favor of Ms. Walker-Swinton on her hostile work environment harassment claim.

### D.    Claim Of Gender Discrimination Based On Compensation

 Ms. Walker-Swinton complains that PSC discriminated against her based on gender because she was "not being compensated as the younger male coaches." (Dkt. No. 1, ¶ 95).   Ms. Walker-Swinton also asserts that she did not "receive a coaching budget as the younger male coaches" and that she was "being treated differently than as [sic] the younger male coaches." (*Id.*, ¶¶ 96, 97).  In her amended brief, Ms. Walker-Swinton claims that "she was subjected to disparate treatment on account of her gender when she did not receive pay for service as Head Coach for Cheer and Dance teams, [while] her male counterparts were." (Dkt. No. 148, at 31).

Ms. Walker-Swinton claims that she continuously complained to the Athletic Director, other coaches, Dr. Smothers, Dr. Stevenson, and Chris Newton, from Human Resources, about the alleged disparate treatment when she coached the cheer and dance teams (*Id.*).  She claims that she and her male counterparts had the same supervisor, Athletic Director Coach  Weaver (*Id.*).  Notably, Coach Weaver was PSC's Athletic Director from Fall 2011 through Spring 2015.  Ms. Walker-Swinton claims that Brandon Greenwood. who served as an Interim Athletic Director at PSC in 2016, "was extremely rude when Ms. Swinton complained to him about not receiving a budget as the other coaches, pay, and a key to the gymnasium where the girls practiced." (*Id.*, at 33).  Further, Ms. Walker-Swinton provides texts with Athletic Director Cochran regarding her compensation from January 2018 (Dkt. Nos. 116-18 at 22; 116-49; 148-34, ¶ 3; 148-57).

Viewing the record evidence in favor of Ms. Walker-Swinton, nothing in the record permits a reasonable inference that Ms. Walker-Swinton complained about her compensation after April 1, 2018.  Even if she had complained, the Court cannot find any evidence in the record of gender-based discriminatory animus with respect to Ms. Walker-Swinton's compensation for coaching the cheer and dance teams.  The cheer and dance teams at PSC were not recognized competitive athletic teams during the time that Ms. Walker-Swinton coached the teams.  Accordingly, the Court finds that Ms. Walker-Swinton has not established, based on evidence in the record even construing all reasonable inferences in her favor, that she was similarly situated to the "younger male coaches" to whom she refers in her brief.  Further, the Court has reviewed the record and does not find any record evidence of PSC's compensation of its male coaches.  The record does, however, contain evidence that Ms. Walker-Swinton was compensated for her work with the PSC cheer and dance teams.  Coach Weaver's affidavit indicates that he completed a request-for-pay

form for Ms. Walker-Swinton to receive pay, and the record indicates Ms. Walker-Swinton received pay for her work as a coach (Dkt. Nos. 116-39; 116-40; 148-34, ¶¶ 14, 17).

Ms. Walker-Swinton asserts that Dr. Collea McKinney was "assistant coach of the women's volleyball team and was not paid, while her husband was assistant coach of the men's basketball team and he was paid. Further, McKinney was the assistant athletic director and was not [p]aid for that position either." (Dkt. No. 148, at 12 (citing 148-69)). The Court finds that Dr. McKinney's affidavit does not support Ms. Walker-Swinton's assertion. Dr. McKinney states that, when she left PSC in 2016, she was paid for being an Assistant Athletic Director, Assistant Volleyball Coach, and Sports Information Director (Dkt. No. 148-69, ¶¶ 8,15). Dr. McKinney also does not reference her husband in her affidavit.

She also states that Dr. Bruce James, an Interim Chair with a master's degree from University of Arkansas at Little Rock was "paid more than Patricia Walker-Swinton" because he was paid as an Interim Department Chair, but she was not (Dkt. No. 148, at 32-33 (citing 148-79, 116-1, at 49; 148-4; 148-58, at 7-8)). Dr. James testified at his deposition, however, that he holds a Ph.D. in representation theory, has been employed at PSC since 1965, has been teaching 40 years, and has served as Chair for the Department of Mathematics (148-58, at 4-8) The Court finds based on the record evidence before it that Dr. James and Ms. Walker-Swinton are not proper comparators.

The Court finds that no reasonable fact finder could find in favor of Ms. Walker-Swinton on her Title VII claim based on her gender-based compensation discrimination claim.

E.     **Claims Of Retaliation Under Title VII And The ACRA**

1.     **Exhaustion**

Title VII requires that a plaintiff must also exhaust her remedies by giving notice of all claims of discrimination in the EEOC Charge. *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630-31 (8th Cir. 2000).  Claims outside the scope of the EEOC Charge circumvent the EEOC's investigative and conciliatory process and fail to provide the charged party with notice. *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).

PSC contends that Ms. Walker-Swinton did not exhaust her administrative remedies with respect to her claim of retaliation under Title VII because she did not select the "retaliation" box on her EEOC Charge form (Dkt. No. 117, at 44, n. 15).  The Court's analysis cannot end, however, with Ms. Walker-Swinton's failure to check the "retaliation" box on her EEOC Charge. "[T]he question is whether the entire text of the charge, and not simply the boxes checked or the claims alleged therein, provides 'sufficient notice of [a] retaliation claim.'" *Henke v. Allina Health Sys.*, 698 F. Supp. 2d 1115, 1124 (D. Minn. 2010); *see also Thomas v. Ameren U.E.*, No. 4:17-cv-2878-SNLJ, 2018 WL 5078361, at *1 (E.D. Mo. Oct. 18, 2018) ("It is well-settled that merely checking a box, or failing to check a box, does not necessarily control the scope of the [EEOC] charge.  The more critical analysis is whether there is any explanation or description supporting a particular claim.").

Ms. Walker-Swinton filed a timely charge alleging that PSC terminated her employment on June 27, 2018, "in retaliation for reporting unlawful employment practices in violation of the Age Discrimination in Employment Act of 1967, as amended, and because of my sex, female, and in retaliation for reporting unlawful employment practices in violation of Title VII of the Civil

Rights Act of 1964, as amended." (Dkt. No. 116-28, at 2).  Although Ms. Walker-Swinton did not check the box for "retaliation," based on the record before the Court, she exhausted her claim of retaliation under Title VII with the EEOC.  *See e.g. Williams-Raynor v. Arkansas Dep't of Health*, No. 4:16CV00761 JLH, 2017 WL 1017636, at *6 (E.D. Ark. Mar. 15, 2017) (finding that claimant had exhausted his claim of retaliation under Title VII where he did not use the term "retaliation" or check the box on his EEOC Charge).

### 2. Legal Standard

To establish a *prima facie* case of retaliation, Ms. Walker-Swinton must show:  (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action by her employer; and (3) a causal connection existed between the protected activity and the adverse action.  *Wilkie v. Dept. of Health and Human Services, Inc.*, 638 F.3d 944, 955 (8th Cir. 2011). For a Title VII claim, "[r]etaliation must be the 'but for' cause of the adverse employment action." *Blomker v. Jewell*, 831 F.3d 1051, 1059 (8th Cir. 2016) (internal revisions, quotations, and citations omitted).  For these claims, "[i]t is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision."  *Blomker*, 831 F.3d at 1059 (citations omitted). The Court evaluates ACRA retaliation claims under the same legal framework.  *See Brown v. City of Jacksonville*, 711 F.3d 883, 892 (8th Cir. 2013); *Barber v. C1 Truck Driver Training, LLC,* 656 F.3d 782, 792 (8th Cir. 2011).  If Ms. Walker-Swinton establishes a *prima facie* case of retaliation, the Court applies the *McDonnell Douglas* framework.  *See Shirrell v. St. Francis Medical Center*, 793 F.3d 881, 887 (8th Cir. 2015).

3.      **Analysis**

a.      **Protected Activity**

PSC contends that Ms. Walker-Swinton did not engage in protected activity and, therefore, cannot establish a *prima facie* retaliation claim.  Protected conduct is conduct by an employee that opposes any practice made unlawful by federal or state anti-discrimination laws or by an employee who makes a charge, testifies, assists, or participates in any manner in an investigation, proceeding, or hearing on such matters.  *See Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 684 (8th Cir. 2012).  "An employee must show that the employer had actual or constructive knowledge of the protected activity in order to establish unlawful retaliation."  *Hervey v. Cty. of Koochiching*, 527 F.3d 711, 722 (8th Cir. 2008) (citing *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 715 (8th Cir. 2000)).

General complaints, such as not feeling supported, not feeling like part of a team, feeling alone, made to feel small, or not feeling empowered and valued, are insufficient to qualify as protected activity.  *See, e.g., Shirrell v. St. Francis Med. Ctr.*, 24 F. Supp. 3d 851, 863 (E.D. Mo. 2014) (finding "vague, unsupported complaint" does not qualify as protected activity), *aff'd* 793 F.3d 881, 887 (8th Cir. 2015).  Any action taken in response to a conversation without the mention of race, gender, or age discrimination cannot be actionable.  *See Helton v. Southland Racing Corp.*, 600 F.3d 954, 960-61 (8th Cir. 2010).  However, the Court notes that to prove protected activity, Ms. Walker-Swinton need not establish that the conduct she opposed was in fact discriminatory.  *See Wentz v. Maryland Casualty Co.,* 869 F.2d 1153, 1155 (8th Cir. 1989).  Rather, Ms. Walker-Swinton must demonstrate a good faith, reasonable belief that the underlying conduct violated the law.  *Id.*

With respect to prior complaints about alleged conduct, Ms. Walker-Swinton asserts that she complained to PSC administrators about how much money was being dedicated to the Panther Dolls cheer and dance team, about how the cheer and dance teams did not have a budget, about how she did not have a key to the gym, and about how she was not paid on time for her work as a coach of the team.  When Ms. Swinton was asked at her deposition whether in an email exchange with the Athletic Director she had complained about discrimination, she asserted that "unfair and discrimination are the same." (Dkt. No. 116-1, at 65-66).  When asked at her deposition why she believes that she was wrongfully terminated, Ms. Walker-Swinton stated "[b]ecause I feel like I was retaliated against[,] okay?" (Dkt. No. 116-1, at 105).  Ms. Walker-Swinton's general complaints are not sufficient to qualify as protected activity.  *Shirrell*, 24 F. Supp. 3d at 863.

To the extent that Ms. Walker-Swinton alleges that she was retaliated against for reporting the April 9, 2018, classroom incident with Jane and John Doe to her supervisors, Ms. Walker-Swinton's statement regarding the April 9, 2018, incident does not include allegations that she was harassed or discriminated against because of her gender (Dkt. No. 116-7).  Her emails to Dr. Stevenson on April 15, 2018, and April 26, 2018, and text messages do not reference any statutorily protected rights (Dkt. Nos. 116-32; 116-33; 116-42, at 8-9).

Ms. Walker-Swinton also appears to allege that she was retaliated against for filing a police report.  Ms. Walker-Swinton testified that the prosecutor's office sent to her a copy of a cease and desist letter transmitted to John Doe and that the next day she was terminated (*Id.*).  This argument fails because filing a police report alleging threats and disrespect by male and female students is not protected activity for purposes of Ms. Walker-Swinton's retaliation claim against PSC.  *See, e.g., Weiland v. El Kram, Inc.,* 233 F.Supp.2d 1142, (N.D. Iowa 2002) (the filing of a police report is not protected activity for purposes of Title VII retaliation claim unless plaintiff reasonably

63

believed substance of report concerned activity prohibited by Title VII) (citing *Buettner v. Arch Coal Sales Co., Inc.,* 216 F.3d 707, 714 (8th Cir. 2000)).

Construing the record evidence in the light most favorable to Ms. Walker-Swinton, the Court determines that Ms. Walker-Swinton cannot satisfy the first element of her *prima facie* retaliation claim.

### b.    Alleged Causation

Even if Ms. Walker-Swinton could establish protected conduct, she cannot establish that engaging in such conduct was the but-for reason she was purportedly retaliated against by being terminated. Ms. Walker-Swinton does not dispute that she used the word "retarded" in class that led to an argument with Jane and John Doe. Additionally, she does not dispute that she assisted students who witnessed the incident with their statements. There is a legitimate, non-retaliatory reason for her termination. As a result, Ms. Walker-Swinton cannot demonstrate the necessary but-for causation to demonstrate retaliation. Ms. Walker-Swinton also fails to demonstrate that there were similarly situated co-workers who were treated differently for the same violations.

As explained, the filing of a police report alleging threats by a male and female student is not protected activity under Title VII. Even if it was protected activity, Ms. Walker-Swinton cannot demonstrate causation sufficient to establish a *prima facie* retaliation claim based on this conduct. Although Ms. Walker-Swinton alleges that PSC retaliated against her for filing a police report that led to John Doe receiving a cease and desist letter, she has not provided evidence that PSC had notice of that letter prior to issuing its termination letter (Dkt. No. 116-22, at 7; 116-18, at 43). Ms. Walker-Swinton asserts that John Doe worked in the President's Office at PSC during the Summer 2018, but that fact does not establish that John Doe would have discussed the cease and desist letter with anyone in the President's Office. "Generally, more than a temporal

connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc), *cert. denied,* 528 U.S. 818, (1999).  Here, construing the record evidence in favor of Ms. Walker-Swinton, she fails to demonstrate more than a temporal connection between the police report leading to the cease and desist letter to John Doe and her termination.

### c.        Pretext

Even if Ms. Walker-Swinton can establish her *prima facie* claim of retaliation, the Court determines that she cannot establish pretext.  For all of the same reasons Ms. Walker-Swinton fails to demonstrate pretext with respect to her gender discrimination claim previously analyzed by the Court, she also fails to demonstrate pretext with respect to her retaliation claim.  Construing all of the record evidence in favor of Ms. Walker-Swinton, no reasonable fact finder would find pretext. As a result, the Court grants summary judgment in favor of PSC on Ms. Walker-Swinton' retaliation claim.

### F.        State Law Claim For Breach Of Contract

Ms. Walker-Swinton alleges breach of contract against PSC under Arkansas law.  Because the Court grants summary judgment in favor of PSC on Ms. Walker-Swinton's federal claims, the Court declines to exercise supplemental jurisdiction over Ms. Walker-Swinton's state law claims.

### G.        Other Pending Motions

Also pending before the Court are multiple motions:  PSC's motion to compel deposition of Reginald Swinton, motion for alternative service or subpoena, and motion for costs and fees (Dkt. No. 86) and ; PSC's motion to quash subpoenas, or alternatively, for protective order (Dkt. No. 88).  The Court grants PSC's motions to file reply briefs.  PSC shall file their reply briefs within 14 days of the date of entry of this Order; the Court has considered PSC's proposed replies

when ruling on the pending motions.  The Court denies as moot PSC's motion to compel deposition of Reginald Swinton, motion for alternative service or subpoena, and motion for costs and fees (Dkt. No. 86) and PSC's motion to quash subpoenas, or alternatively, for protective order (Dkt. No. 88).

### III.   Conclusion

It is therefore ordered that:

  a.  the Court grants in part and denies in part consistent with the terms of this Order PSC's motion to strike plaintiff's amended responses to defendant's statement of undisputed facts and brief in support of response to motion for summary judgment (Dkt. No. 154).

  b.  the Court grants PSC's motion for summary judgment and dismisses with prejudice Ms. Walker-Swinton's Title VII and ACRA claims of gender discrimination based on Ms. Walker-Swinton's termination, gender discrimination based on hostile work environment, gender discrimination based on compensation, and retaliation (Dkt. No. 116).

  c.  the Court declines to exercise supplemental jurisdiction over Ms. Walker-Swinton's state law claims for breach of contract against PSC.

  d.  the Court grants PSC's motions for leave to file reply briefs in support of motion to compel and motion to quash subpoenas (Dkt. Nos. 120, 124); PSC shall file their reply briefs within 14 days of the date of entry of this Order; and the Court has considered the proposed replies in ruling on the pending motions.

e.      the Court denies as moot PSC's motion to compel deposition of Reginald

        Swinton, motion for alternative service or subpoena, and motion for costs

        and fees (Dkt. No. 86).

f.      the Court denies as moot PSC's motion to quash subpoenas, or alternatively,

        for protective order (Dkt. No. 88).

It is so ordered, this the 31st day of  March, 2021.


_____
Kristine G. Baker
United States District Court Judge